# 24 CV 5554

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X

PRASANNA GOONEWARDENA                                  COMPLAINT

                              Plaintiff                JURY TRIAL DEMANDED

        -against-                                      DOCKET No.

City of New York, Emily Tone-Hill, Albert Gamarra, Ann Scalia,
Dinorah Nunez-White, Eric Smalls, Sonia Daly, Maria Feliu,
Caroline Hernandez, Frank Pira, April Hill, Petal Harlow,
Tyra Branch, Mark Neal, Denise Deprima, Alexander Stadnyk,
Cindy Rivera, Charise Latimer-Jackson, Sherkia Boone,
Sylvia Hinds-Radix, Therasa Spillane, Paul Ligresti,
Stephen Dickerson, Venessa Faison, Eric Smalls, Dennis Whinfield,
Jill Berry

                              Defendants
-----------------------------------------------------------------------X

                        Preliminary statement

1.        There probably had never been a plaintiff who brought a civil action in Southern

District with slam dunk evidence (audio recordings, documentary evidence & trial transcript with

evidence lying at a trial making an unbelievable story that is not logically possible). Society

makes us believe that when a prejudiced, discriminatory & an unlawful act is committed, it is

always a white individual on others. It is not. A perfect example is Clarence Thomas. Clarence

Thomas is evil & racist person in America. Mr. Thomas dislikes blacks, colored immigrants, and

Hispanics. Everyone knows this.


2.    Plaintiff here is going to take everyone on a journey of prejudiced, and unlawful act

committed by Hispanics and African Americans with the help of some white lawyers – not legal

minds. The Defendants destroyed the Plaintiff's career, reputation & emotional wellbeing

because of Plaintiff's race, creed & color. The perpetrators were never involved in hiring the

Plaintiff. They [are] only involved in committing unlawful acts against the Plaintiff. The DSS

inexperience Counsel Emily-Tone Hill conspired with the Office of Disciplinary Affairs

("ODA") hearing officer Cindy Rivera by writing to the OATH Judge that she was asking for

termination of the Plaintiff on the 5th set of charges before the step 1 hearing violating due

process required pursuant to CSL § 75. The DSS General Counsel's Ann Scalia, Paul Ligresti &

Emily Tone-Hill (all white race), conspired, aided & abetted with Black & Hispanic HRA

employees to falsely accuse (recorded conversations) the Plaintiff for each benefiting financially

& future appointments. (These are not conclusory allegations, true facts supported by recorded

conversations and documents.) The DSS legal department ("OLA") and the office of the

disciplinary affairs ("ODA") for years covered up criminal activities by Black & Hispanic

employees. For example, the 1st deputy commissioner Michael Laidlaw & Gary Jenkins (both

black). (see exhibit A.) Mr. Gary Jenkins, who was a sexual predator, ended up being the DSS

commissioner. The DSS became a criminal enterprise. Plaintiff was retaliated for exposing the

unlawful acts by ODA and OLA staff. Ms. Tone-Hill, Ms. Dinorah Nunez-White, Mr. Paul

Ligresti, Ms. Denise DePrima committed criminal acts by clocking in and out at various

locations using agency given cellphone without working required 7- hours of honest days of

work. This scam had been in practice for a number of years by Dinorah Nunez-White, Paul

Ligresti & Emily Tone-Hill. Ms. Emily Tone-Hill has been home since 2020 and getting paid

without working 7 hours a day. Her explanation is that she has reasonable accommodation

because she is pregnant. Pregnant for 4 years? The actual reason was that she needed to attend to

her child.

3.  Buddha said, "Three things cannot be hidden long- the Sun, the Moon & the truth."

# I.    Jurisdiction and venue

4.  This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343.

This Court has supplemental jurisdiction over the state causes of action pleaded.

5.  Venue is proper in this district under 28 U.S.C. § 1391(b) because the underlying

events took place in Manhattan New York and proper in this district.


# II.    Procedural requirement

6.  Plaintiff will file a copy of the complaint within 10 days with the NYC corporate

counsel & NYC Commission on Human Rights pursuant to NYC Administrative

Code § 8-502 (c).

7.  On 5/7/2024, EEOC issued the right to sue letter. This action is within the statute of

limitation.

# III.    Parties

8.    Plaintiff is a 55-year-old male of Sri Lankan ancestry and race, and South Asian

descent. The Plaintiff has been continuously employed by the CITY and the HRA since February

2020. Plaintiff's address is: 247-34A 77 Cres, Bellerose, NY 11426.

9.  Plaintiff is a resident of the City of New York and the State of York.

10. Defendant New York CITY is a municipal corporation existing under and by the

laws of the State of New York.

11.  At all relevant times, Defendant Emily Tone-Hill (white Race female) was

(and is) an assistant counsel for the HRA and its joint agency, the Department of Homeless

Services ("DHS") is sued in her personal and official capacity. Her address is: 150 Greenwich

Street, 38th Floor, New York, NY 10007.

12. Defendant Ann Scalia (white Race) is the General Counsel of the DSS is used in her personal capacity. Her address is: 150 Greenwich Street, 38th Floor, New York, NY 10007.

13. Defendant Paul Ligresti (white Race) is the Assistant General Counsel of the DSS and sued in her personal capacity. Her address is: 150 Greenwich Street, 38th Floor, New York, NY 10007.

14. Defendant Dinorah Nunez-White (Black Dominican Descent) is the Executive Director of the Office of Disciplinary Affairs and used in her personal capacity. Her address is: 150 Greenwich Street, 31th Floor, New York, NY 10007.

15. Defendant Charice Latimer-Jackson (black race) is the Deputy Director of the Office of Disciplinary affairs and used in her personal capacity. Her address is: 150 Greenwich Street, 31th Floor, New York, NY 10007.

16. Defendant Cindy Rivera (Hispanic Puerto Rican Descent) is a step 1 hearing officer with the office of Disciplinary affairs and used in her personal capacity. Her address is: 150 Greenwich Street, 31th Floor, New York, NY 10007.

17. Defendant Petal Harlow (black Race) is a step 1 hearing officer with the office of disciplinary affairs and sued in her personal capacity. Her address is: 150 Greenwich Street, 31th Floor, New York, NY 10007.

18. Mark Neal (black race) is the Deputy Commissioner of the DSS and sued him in his

personal capacity. His address is: 150 Greenwich Street, 32th Floor, New York, NY 10007.

19. Frank Pira (white race) is the executive director of the special investigation division and sued in his personal capacity. His address is: 150 Greenwich Street, 38th Floor, New York, NY 10007.

20. Caroline Hernandez (Hispanic race) is an assistant investigator with the Special investigation division and sued in her personal capacity. Her address is: 150 Greenwich Street, 38th Floor, New York, NY 10007.

21. Alexander Stadnyk (white race) is an investigator with the special investigation division and sued in his personal capacity.  His address is: 150 Greenwich Street, 38th Floor, New York, NY 10007.

22. Jill Berry (white race) is the 1st deputy commissioner with the DSS and sued in her personal capacity. Her address is: 150 Greenwich Street, 38th Floor, New York, NY 10007.

23. Eric Smalls (black race) is an investigator & counsel with the EEO office and sued in his personal capacity. His address is: 150 Greenwich Street, 42th Floor, New York, NY 10007.

Dennis Whinfield is the deputy director of the EEO office and sued in his personal capacity. Her address is: 150 Greenwich Street, 42th Floor, New York, NY 10007.

24. Tyra Brach (black race) is an assistant with the conflict resolution office and reports to Stephen Dickerson sued in her personal capacity. Her address is: 150 Greenwich Street, 31th Floor, New York, NY 10007.

25. Sherkia Boone (black race) is an assistant of the office of disciplinary office and sued in her personal capacity. Her address is: 150 Greenwich Street, 31th Floor, New York, NY 10007.

26. Stephen Dickerson (black race) is a social worker with the conflict resolution office and sued in his personal capacity. Her address is: 150 Greenwich Street, 31th Floor, New York, NY 10007.

27. Venessa Faison (black race) is a manager with the BFI division and sued in her personal capacity. Her address is: 150 Greenwich Street, 31th Floor, New York, NY 10007.

28. April Hill (black race) is the coordinator in the office of disciplinary office and sued in her personal capacity. Her address is: 150 Greenwich Street, 31th Floor, New York, NY 10007.

29. Defendant Sylvis Hinds-Radix was the cooperate counsel of the city of New York and sued in her personal capacity.

30. Defendant Albert Gamarra (Hispanic race) was an executive director of the IDNYC and sued in his personal capacity. 150 Greenwich Street, 38th Floor, New York, NY 10007.

31. Defendant Sonia Daly (black race) was an executive director of the IDNYC, now with the

NYC Mayor's office asylum seekers division and sued in her personal capacity. 150 Greenwich Street, 38th Floor, New York, NY 10007.

32. Defendant Theresa Spillane (white Race) is a supervisor of the RJI division with the New York State Supreme Court and sued in her personal capacity. 60 Centre Street, New York NY 10007

33. Defendant Maria Feliu (Hispanic race) was a deputy director in charge of site coverages at IDNYC and sued in her personal capacity. 150 Greenwich Street, 38th floor, New York, NY 10007.

## IV.    Factual allegations

34. Although Plaintiff lists the complaint as "allegations" they're not, rather facts directly obtained from the trial transcript, documentary evidence, and audio recordings.

35. This complaint is essentially a summary judgment request from the court in favor of the Plaintiff: no discovery is needed as most of the witnesses already testified lying at trial confirming the violation of laws, and statues; 12 (b) (6) motion is not necessary as this circuit ruling pertains to similar action – *Thomas Colon v. City of New York*, 19 Civ. 10435 (PGG) (SLC) (exhibit I), the requirements, and case laws for each claim in this action are presented & covered.

36. The DSS consists of 62% Black, 32% Hispanic, and the other 6 % round up of different races.

37. As such, Thomas Colon's (Exhibit G) claim that he was demoted and eventually terminated

because he is Hispanic is dubious and not plausible: He was given a deputy commissioner

position because he is Hispanic; he was demoted and eventually terminated because he

committed a criminal act. The Colon case was settled immediately because he is Hispanic and

his lawyer is a Black Nigerian. His claim that Whites were promoted (Jill Berry) over him is not

plausible because there are not that many whites to find to promote. However, Plaintiff agrees

with Mr. Colon that Defendant Jill Berry is unqualified to be the 1st deputy commissioner. Mr.

Colon is lucky that he was not criminally charged.

38. Upon information and belief, Mr. Colon had a history of sexually harassing women.

(Exhibit A at p. 4.) Factual evidence is that "Both Gary Jenkins and Colon previously had

multiple sexual harassment complaints filed against them but DSS 'did nothing to stop their

behavior' and even gave them pay increases" according to Jacqueline Torress lawsuit. (*id.*)


39. Jacqueline Torres claim filed in 2019 in Bronx Supreme Court (Index No.: 260161/19) and

was settled on 2/18/20. (Exhibit H.) Torress is Hispanic. City law department immediately settled

the case because the Plaintiff- Torress is Hispanic. This is proof that Hispanics and blacks get

justice.

40. Mr. Colon was not terminated for sexually harassing women because he is Hispanic. The

final straw was his criminal conduct.

***Defendant Albert Gamarra***

41. Defendant Gamarra's education (alleged PHD) was an online degree. Knowing Defendant

Gamarra, most likely someone else wrote all the papers on behalf of Gamarra and he got the

credit. Mr. Gamarra has no skills. He gives orders to others to follow (Sonia Daly). Mr. Gamarra

can't even put a proposal together.

42. Defendant Gamarra comes to work wearing a t-shirt and sneakers violating DSS dress code policy.

43. Defendant Gamarra could not even keep his composure at trial. He started to ask questions and argue with the Plaintiff:

> ALJ DAVIS: Dr. Gamarra, you do not answer with a question. Mr. Goonewardena, he
>
> has said -- yes, Dr. Gamarra 17 has testified to the best of his rele —
>
> recollection, he did 18 not wear sneakers during the meeting on January
>
> 11th, 2023.
>
> MR. GOONEWARDENA: Yes, Your honor.
>
> ALJ DAVIS: Next question.
>
> MR. GOONEWARDENA: I also respectfully –
>
> respectfully request, this is one of the reasons we had issues with -- my issues with
>
> him, he talks back and he –
>
> ALJ DAVIS: No, no, no.
>
> MR. GOONEWARDENA: He did talk back.

(Tr. 139:15-25)

44. At times, Gamarra talked over ALJ Davis.

45. Defendant Gamarra is so arrogant, as he is the elephant in the room, he feels law, rules don't apply to him. He approached ALJ Davis with his right hand in his pocket to speak to the judge in private:

> MR. GAMARRA: I just had a –
>
> ALJ DAVIS: Okay. If you have a logistical question, we'll discuss it off the
>
> record.
>
> MR. GAMARRA: It was a question as related to something personal.
>
> ALJ DAVIS: Okay. You can approach me during the break.

MR. GAMARRA: Okay.

(Tr. 296:9-16)

46. Defendant Gamarra was still not done with his unlawful and con game. He wanted to speak with ALJ Davis again for the second time in private. This has never happened in the history of the United States at a trial. Gamarra is so physically aggressive, that puts his right hand in his pocket and approaches ALJ Davis:

> MR. GAMARRA: Thank you. I'm coming to speak with you.
>
> ALJ DAVIS: No, you cannot. No, if there are any matters you need to speak, you can speak to the Petitioner and if it's appropriate to raise it with me.
>
> MR. GAMARRA: Oh, okay.
>
> MR. GOONEWARDENA: Through the lawyer.
>
> ALJ DAVIS: Mr. Goonewardena, stop making comments. Unless it's not clear from the record, Mr. Goonewardena just said through the lawyer. As I have indicated before, the  only ex-parte communications I will have are administerial matters regarding scheduling and logistics. And that is all that I will entertain from either side. Okay. So it is now bout 12:50 PM, we are going to break for lunch. We are going to come back at 2:15. Who is your next witness?

(Tr. 333-24-25, 334:1-14)

47. Rules, procedures, and laws do not apply to these Defendants. These are the star witnesses of the DSS. There are 1500 pages of comical, clown show by the Defendants. The Plaintiff cannot put it all here.

48. Mr. Gamarra did not even know what protected speech under the 1st Amendment. He claims that he has PhD in criminal justice (online degree) from John Jay College of Criminal Justice.

> Q: Is it fair to say that DSS is a -- a government entity?
> A: Yes.
> Q: And so the -- is it fair to say that the employees have  certain rights?
> A: Yes.
> Q: And could you -- is -- one of the rights is protective speech?
> A: No.
> Q: No. Okay. And why is that, it's not a -- it's not a right?
> A: Within the agency, we operate through the policies and  the procedures
>   of the agency, the code of conduct, and a number of other policies
>   informationals, that we're supposed to abide by when in agency –

(Tr. 142:12-25)

### Defendant Sonia Daly

49. Sonia Daly is the entertainment queen. There is nothing truthful that comes out of her mouth. She is doing dirty work for Albert Gamarra. Plaintiff says: Good luck at your new position at the mayor's office, might needs to work for the first time.

### Defendant Emily Tone-Hill

50. Defendant Tone-Hill is a perfect example that having a bar license does not mean she knows the law and possesses legal knowledge. With Ms. Tone-Hill as the lead attorney at OATH trial for the petitioner, it was comical. ALJ Davis had to make objections on behalf of Tone-Hill and had to bail her out.

> Q: Well, if they -- if the hearing officer and hearing officer's supervisor behave in
> a childish and incoherent manner, does the Respondent have the legal right in his
> response to make  known of that?
> ALJ DAVIS: Okay. Is there any, is there -- wait, wait, is there an objection?
> MS. TONE-HILL: Yeah, I mean, yes.
> ALJ DAVIS: Okay. It's sustained.

MR. GOONEWARDENA: You -- it seems like you are enlisting for the

objection.

ALJ DAVIS: I am also rephrasing your question so that they are clear. So I

suggest that you ask the next question.

MR. GOONEWARDENA: But isn't that up to the 25 Petitioner to make -- if they

want to make an objection.

(Tr. 780:11-25)

51. When the trial judge has to bailout the opposing counsel, that is when you know that the

things are going really bad for them and question the lawyers skills.

52. Defendant Tone-Hill conspired with others to bring Plaintiff on charges.

53. It is not disputed that Defendant – Emily Tone-Hill (white race) at the employment law

division at the advice of her superior General Counsel Ann Scalia (white race) & Paul Ligresti

(white race) who did not hire the Plaintiff, nor do they evaluate Plaintiff's performance. They

requested resignation from the plaintiff twice. Then again, conspired with the ODA step 1

hearing officer Cindy Rivera violating CSL § 75, that Ms. Emily Tone Hill requested the

termination on the fifth set of charges even before the step 1 hearing. (Exhibit I.)

54. At trial, Defendant Petal Harlow testified that until the step 1 hearing is entertained, until all

the evidence is in, ODA does not contact others. Then why is Tone-Hill in the direction of Ann

Scalia interfering with the step 1 hearing process: racial hatred?

ALJ DAVIS: Okay. To prepare for the informal 6 conference, do you talk to

people to -- do you talk to other employees at the agency to understand

what the penalty that's being -- that should be appropriate in that case?

MS. HARLOW: This is done after the informal conference.

ALJ DAVIS: Okay.

MS. HARLOW: After the Respondent has submitted testimony and

evidence.

ALJ DAVIS: Okay. Q: So at this -- at this po -- and if I -- if the Department

of Legal Affairs, even before the step 1 hearing is being schedule -- held, if

the Department of Legal Affairs come up and say -- communicate to the

Respondent or someone else that we are requesting his termination, he was

just served with the charges. Is that the standard policy?

ALJ DAVIS: Do you understand the question?

A: Sir, it does not work that way.

ALJ DAVIS: Okay.

Q: So –

ALJ DAVIS: So you -- wait. So, just to be clear,

your testimony is that the agency does not come with its recommended

penalty to you before the step 1 conference?

MS. HARLOW: That is correct.

ALJ DAVIS: Okay. Next question.

Q: So if at any point, a lawyer from the legal department communicated

with the Respondent saying, we are asking for his termination and the step

1 hearing has not even been held, is that a -- is that a code of conduct

violation?

(Tr. 565: 5-25; 566: 1-8)

55. Ms. Tone-Hill made a fool out of herself in response to her objection that audio recordings

should not be played because the witness did not know that he was being taped:

MS. TONE-HILL: Well, Your Honor this -- the -- the witness has no knowledge of this recording as they were not informed that the recording was being taken at all, prior. They also -- the recording is an hour -- is an hour -- over an hour and a half long. There's been no specification as to what portions of the recording are -- the Respondent intends to admit into evidence. So there's a relevance issue. But the -- yeah, the witness was not informed that this would -- this recording was taking place beforehand. And actually –

ALJ DAVIS: Is there a -- is there -- is there a requirement that the witness be informed that he -- that he's being recorded?

MS. TONE-HILL: I mean, there -- this meeting was - you know, there was an understanding that -- that the cell phones would not be on as -- as per even the Respondent.

ALJ DAVIS: No, no, no. Okay. Are there any -- what -- you're saying the witness was not informed, and I'm asking you what required the witness to be informed that there was going to be a recording?

MS. TONE-HILL: I'm -- I'm just saying the witness did not have knowledge of this recording taking place.

ALJ DAVIS: I -- I understand that. I understand 6 that, but is there a requirement that the witness be informed 7 that the meeting was going to be recorded?

MS. TONE-HILL: Technically, there's -- there is the possibility that cases could have been discussed that specific, you know, client information could have been discussed during this –

ALJ DAVIS: No, no, no. Ms. Tone-Hill, I'm asking you a very specific question. Is there some prohibition that -- or -- or -- or some requirement that the witness had to be alerted that there was -- that the meeting was going to be recorded? MS. TONE-HILL: No, there's no specific requirement in this context. ALJ DAVIS: Okay. So –

MS. TONE-HILL: Yeah.

ALJ DAVIS: Okay. Mr. Goonewardena.

MR. GOONEWARDENA: Yes, Your Honor.

(Tr. 218:3-25)

56. The Defendants violated the code of conduct, and they should be brought upon charges.

57. There are too many attorney disciplinary rules violations by Tone-Hill,

Ann Scalia, Shavani Naidu-Price Paul Ligresti, and Dinorah Nunez-White to list here.  This is

just to satisfy F. R. Civ. P. 8 (a).

***DSS Discriminated against Asians and South Asians.***

58. The DSS discriminates against South Asians. Proof: Plaintiff's case and that there are no

Asian or South Asian managers at DSS. There are less than 2% of Asian and South Asian

employees at DSS. The entire HRS (human resources department) consists of Blacks and

Hispanics. The DSS breaks civil service laws by bypassing hiring procedures only to hire

Hispanics and Blacks. For example, Mr. Gary Jenkins's sisters were brought into HRA bypassing

and manipulating the civil service requirements. Upon information and belief, Gary Junkin's

sister assaulted an employee at her previous employment and was terminated, then suddenly she

ended up at HRA.

59. Upon information and belief, Gary Jenkins who is black had a history of sexually harassing

Women. (See exhibit A.) Yet he held a high position and eventually became the DSS

commissioner. He was an embarrassment for the DSS from day one. This is evidence that DSS

favors blacks, and society favors blacks. When talking about blacks misbehaving and society

favoring them: Clarence Thomas - a guy who cheats on tax returns, misbehaves, supports women

and men (only white) who dislike blacks and have no valid purpose in life.

60. As a matter of policy, DSS does not bring charges against Blacks and Hispanics (Exhibit A.)

61. Applying the Colon case standard, *supra*, Plaintiff's case should be settled immediately.

62. Some claims are not yet actionable as Plaintiff is still employed. If The Defendants terminate the Plaintiff, then the termination will trigger those claims such as property interest.


63. The plaintiff is a Fraud investigator (South Asian ancestry & race Sri Lankan-born colored immigrant) who currently works for the Bureau of Fraud Investigation division. He was a fraud investigator approving IDNYC cards at the IDNYC department from February 10, 2020, to March 9, 2023.

64. Plaintiff started his journey with the Department of Social Services ("DSS") on 2/10/2020 as a Fraud Investigator with the IDNYC department. The plaintiff had a dream to be part of NYC. He accomplished his dream. The plaintiff wanted to continue his journey. But the Defendants [have] other ideas. They continue to harass the Plaintiff creating a hostile working environment by serving five sets of disciplinary charges that contain false statements damaging Plaintiff's reputation. (Exhibit B-E.)

65. None of the Defendants involved here was/is involved in hiring, working, and evaluating Plaintiff. The Plaintiff met most of the Defendants for the first time at the OATH trial that was held from May 14, 2024, to June 11, 2024.


66. Every phone conversation Plaintiff had with the Defendants was recorded. They did not know that they were recorded when the false accusations were Made.

67. Defendant Emily Tone-Hill said at trial that the HRA law department is not representing

the individual defendants, only the agency. (Exhibit J, Tr. 592: 7-12, 892: 1-3.) As such, there is no lawyer-client privilege that exists.

### *December 23, 2022, interaction*

68. On December 23, 2022, following the DSS agency policy time and leave (seven days in advance), Plaintiff requested December 30, 2022, off. As per department policy, Plaintiff requested in writing to his immediate supervisor Andrei Singh (Guyanese descent) CC to Maria Feliu and Charmaine Harvey. No violation was made here by the Plaintiff.

69. On the same day, Mr. Singh wrote back asking if the request was sick leave or personal, meaning if it was sick leave, it would be granted.

70. The Plaintiff wrote back stating it was personal for personal business.

71. After some time, Mr. Singh wrote back stating that Plaintiff's request was denied. Since the Plaintiff knew ahead of time that other fraud investigators were going to be present on December 30, 2022, that could have relieved, the Plaintiff requested an explanation why the 30th off was denied.

72. After back-and-forth communications with Mr. Singh, Plaintiff called Ms. Maria Feliu (the one in charge of site coverages) stating that Plaintiff is no longer requesting December 30, 2023, off and that Plaintiff will report to work. Ms. Feliu in writing wrote to others confirming that the Plaintiff no longer wants the 30th off and that he will be present at the Navigation site (Red Cross building at 350 West, 49 Street Manhattan). No agency violations and the standard procedures were followed.

73. The Plaintiff reported to work on December 30, 2022, early as usual. The leave request was a dead issue. However, it was not for Defendant Albert Gamarra.

### *Retaliation by Defendant Gamarra*

*74.* On or around December 28, 2022, Defendant Gamarra requested from his friend Maria Feliu to pull the Plaintiff Navigation site. A reason was not given to the Plaintiff.

*75.* The Plaintiff was scheduled to be at the navigation site until June of 2023, its scheduled closure. The Plaintiff bonded with his coworkers. The Plaintiff exchanged Christmas gifts and worked as a team. Plaintiff contacted his immediate supervisor – Andrei Singh one of the few Asians at HRA and was intouch with him to find out the reason why Plaintiff was pulled from the site.

76. On or around December 28, 2022, in a recorded phone conversation with Mr. Singh, he confirmed that he did not know the reason for the pull, and that he was not informed of the reason.

77. A few days later, Plaintiff received an email from Charmaine Harvey, Plaintiff's deputy director, that a meeting had been scheduled for January 11, 2023, and that Plaintiff may bring a union representative as the meeting could lead to disciplinary action.

78. The Plaintiff was not told what the purpose of the actual meeting.

79. On December 29, 2022, Plaintiff received an email from Sonia Daily, executive director of performance, who oversees community service associates that she wants to get the union representative of Albert Gamarra (Andrew Douglas) for the Plaintiff. (Exhibit K.)

80. Plaintiff responded to her email stating that Plaintiff is in touch with his immediate supervisor (standard procedure) and that her help is not needed as she is not in Plaintiff's chain of command, which she is not. (*id.*)

81. Defendant Gamarra does not understand that when Plaintiff requested on December 23, 2022, to take December 30, 2022 off, that is seven days in advance pursuant to DSS time and leave policy. Defendant Gamarra has his timeline that is not standard with DSS:

Q: And this -- and this was about leave that I'm requesting for December 30th, correct?

A: Yes.

Q: So is it fair to say, this is a yes or no answer, is it fair to say I did follow the agency time and leave policy by requesting it seven days in advance?

A: No.

Q: Yes, or no

A: No.

Q: Why is that?

A: Because that's not the deadline you gave the staff member.

Q: I don't have –

ALJ DAVIS: Okay. Okay. Mr. Goonewardena -- Dr. Gamarra?

MR. GAMARRA: Yes.

ALJ DAVIS: Is there a DSS or HRA policy as to the deadline for an employee to request leave time?

MR. GAMARRA: Yes. Seven days.

MR. GOONEWARDENA: Okay. That's the end of that question.

Q: So it's fair to say that I follow the time and leave  policy to its word. I requested a -- on 23rd, I requested I want 30th off. I'd like to have the 30th off right? Yes, or no? That's  -- is a yes or no answer.

A: No.

Q: No. Why is it -- so you are telling me that when I requested on December 23rd, early in the
    morning –

(Tr. 149:22-25, 150:1-24)

82. Defendant Gamarra violated the chain of command by not contacting Plaintiff's immediate supervisor. He contacted his Hispanic friend Maria Feliu. He didn't contact Plaintiff's immediate supervisor because he is South Asian.

83. Defendant Gamarra terminated Mr. Andrei Singh's employment the only South Asian supervisor at DSS. At OATH trial, Defendant Gamarra testified:

> Q: So you contacted my immediate supervisor and what did you contact my immediate
>
>     supervisor about this?
>
>  A: I contacted a deputy director.
>
> Q: Did you at any point contact my supervisor?
>
>  A: No.

(Tr. 190:8-12.)

84. Defendants Gamarra, Dinorah Nunez-White & Stephen Dickerson conspired to bring false charges against the Plaintiff. Documentary evidence shows email communications between each other. The subject: Plaintiff.

85. Ms. Nunez-White and Gamarra gave contradicting statements at trial about the purpose of their communications.

86. **Please excuse Plaintiff's typo errors made in email communications as Plaintiff was in a rush to get his message and thoughts across.**

87. Defendant Gamarra himself confirmed that Defendant Daly is not in Plaintiff's chain of command. (Exhibit L.) Defendant Gamarra stated in that email to Plaintiff, "You should not directly contact Executive Director of Operations Sinia Daly (Who is not in your chain of

command) or Deputy Commissioner Colette Samman. (Id at ¶ 2.) Now we have confirmation

from Mr. Gamarra that, (1) Sonia Daly is not in Plaintiff's chain of command, (2) that Ms. Daly

herself should not be contacting any investigators (Plaintiff) as she is not in Plaintiff's chain.

88. When Defendant Gamarra contacted Daly and conveyed confidential information that

the Plaintiff was brought up on charges (without a valid cause) and that he needed her help, Mr.

Gamarra violated Plaintiff's rights, specifically confidentiality.

89. At no point before and after the January 11, 2023, meeting, Defendant Gamarra gave any

documentation pertaining to the false charges. January 11, 1023, meeting with Gamarra,

Defendant Daly was not present as she had no business. More proof that (1) she is not in

Plaintiff's chain; (2) that she entered the picture (to get a union rep for the Plaintiff) to help

Gamarra as a coconspirator. The entire meeting was recorded and admitted onto evidence at

OATH trial.

90. Ms. Sonia Daly is the entertainment queen. She does the dirty work for Defendant

Gamarra.

### *Retaliation for filing a complaint with the EEO office*

91. On December 28, 2022, Defendant Denise DePrima in a recorded phone conversation

with Plaintiff after listening to the harassment Plaintiff endured, she advised:(1) to file a

complaint with EEO office;(2) she can take a complaint to investigate harassments; (3) that she is

going to refer the facts to conflict resolution officer Stephen Dickerson and that Mr. Dickerson

should help the Plaintiff. (Exhibit Q.)

92. As per DePrima's request, Plaintiff sent a copy of the complaint to Ms. DePrima to

investigate harassment and another copy to EEO office.

93. Sometime in January of 2023, Defendant Eric Smalls contacted Plaintiff by email stating

that he wants to talk to the Plaintiff.

94. Plaintiff spoke with the Defendant Smalls on January 10, 2023. The conversation was recorded. That recording was played at the OATH hearing.

95. Plaintiff did not want to go into detail about the complaint since it was put in writing.

96. Defendant Smalls discouraged Plaintiff from moving forward with his complaint. This is a violation of NYC EEO policy. Although Plaintiff already knew that everyone in EEO department was black, since Mr. Smalls behavior was not in line with NYC EEO policy, Plaintiff wanted to get on record Mr. Smalls admitting that he is Black. The Plaintiff asked whether he is African American after more than ten minutes into the conversation. This is not a violation at all.

97. Then since a complaint should include Plaintiff's own experiences, Plaintiff said, that the Plaintiff was assaulted by an African American Guy in December of 2022. There were many African Americans were watching but no one came to assist Plaintiff. Then an Irish man (Tony) from Ireland helped the plaintiff. The Plaintiff told his experience to Mr. Smalls. The Plaintiff never said, "… he was very nice." (Exhibit M at ¶4.)

98. Since Plaintiff is South Asian, upon information and belief, after consulting on the phone with Ann Scalia, Nunez-White, his supervisor Dennis Whitfield, & Charise Latimer-Jackon, Mr. Smalls wrote to Defendant Nunez-White. (*id.*)

99. Mr. Smalls confirmed at trial that he wrote to Ms. Nunez-White to bring Plaintiff on disciplinary charges.

100.     Mr. Smalls falsely stated: "…when I brought up Dennis Whinfield's name, he stated 'He sounds like a black man also.'" (*id.* At ¶ 4.)


101.     Defendant Smalls admitted that Plaintiff's conversation is confidential and that it

is a protected activity. (Filing an EEO complaint is a protected activity, and the investigator must

not retaliate on the information obtained during that conversation related to an EEO complaint.)

102.     Working for EEO office as an instigator, Labor Relations director, and Office of

Disciplinary affairs (Dinorah Nunez-White) are sacred one where no one should be retaliated &

discriminated against for any reason using *the* position.

103.     Mr. Smalls violated that sacred duty because of his hatred and policy that they

only serve blacks and Hispanics.

104.     Mr. Smalls owes a fiduciary duty to the Plaintiff.

105.     On a recorded phone conversation on March 2, 2023, Mr. Smalls stated that he

never received a complaint from the Plaintiff and that he referred the complaint to the proper

area. However, at trial, Mr. Smalls testified:

> Q: So you never referred my complaint to anyone else; yes or no?
> A: No.
> ALJ DAVIS: Other than Ms. Nunez-White?
> MR. SMALLS: Yes.
> Q: Is -- our communications should be confidential?
> ALJ DAVIS: Mr. Goonewardena, you already asked those questions and got the
> answers.
>  MR. GOONEWARDENA: Which is?
>
> ALJ DAVIS: Which is yes, they're supposed to be confidential. Next question,
> please. On a new subject.

(Tr. 909:10-20)

106.     Mr. Smalls further stated:

> Q: So do you believe your actions were proper referring the co -- referring our
> confidential conversations to Dinorah Nunez5 White?
> A: Yes.

(Tr. 910: 3-6)

107.     Mr. Smalls to cover up his unlawful act, he falsely stated:

> Q: Did you ever tell me that your office never received a 19 complaint from me;
>    yes or no?

A: No.

108.     On the March 2, 2024, recorded phone conversation, Mr. Smalls clearly state that his office never received a complaint from the Plaintiff. If Mr. Smalls never did anything wrong, he should not lie.

109.     These kinds of racist people should not be allowed to hold positions where they have decision-making powers.

110.     Defendants Tone-Hill, Scalia, Ligresti, DePrima, have a copy of the March 2, 2023, phone call. Yet, the Defendants continue to spin lies, violating ethical obligations as an officer of the Court.

### Defendant Dinorah Nunez-White conspired with the Defendants

*111.*     Defendant Nunez-White testified that she was not involved until Plaintiff questioned her. Mr. Eric Smalls wrote to her, Mr. Gamarra communicated with her, Mark Neal wrote to her and she was personally involved in creating a personal file on Plaintiff. (Exhibit N.)

112.     Nunez-White falsely accused Plaintiff she told Plaintiff not to contact her, and that Plaintiff asked for personal information about Petal Herlow. The recording was played at trial and she confirmed that Plaintiff never asked for personal information about Petal Harlow, that she never told Plaintiff not to contact her, and that it took three years to get her law license.

113.     Defendant Maria Feliu created a document 10 days later on January 11, 2023, the day of the meeting with Defendant Gamarra. The problem is her font (Calibri) is only on that document that matches Defendant Gamarra's font. Defendant Gamarra always uses Calibri font. Defendant Feliu always uses Times Roman font. So, it is fair to say that the false accusation 10 days later was written by Gamarra, and emailed it to Feliu and told her to copy and paste it and send it back to him to bring the Plaintiff on another false charge.

114.    At the DSS legal department, no one acts without consulting with the General Counsel Ann Scalia. It is her department. Everything goes through her. As such, she is responsible for other Defendants' acts.

115.    Defendant Paul Ligresti testified that after the charges and specifications are drafted, the hearing officer sends them to the legal department for review. Then they send it back to serve on the Respondent. Therefore, Paul Ligresti, Scalia, and Tone-Hill are involved in approving the false accusations on five sets of disciplinary charges.

116.    Petal Harlow testified that her supervisor Charise Latimer-Jackson and her together drafted the charges. Therefore, Ms. Latimer-Jackson is involved in the conspiracy and the discriminatory unlawful conduct.

117.    At the step 1 hearing, Latimer-Jackson admitted that she called the bodybuilder – who harassed, intimidated, and followed Plaintiff around because the secretary Sherkia Boone told her that Plaintiff threatened her. However, after the recording was played at trial, Ms. Bonne confirmed that on the recording the Plaintiff did not threaten Ms. Boone. Now Plaintiff has a claim against Boone, Latimer-Jackson. (Exhibit O.)

118.    The hearing officer Cindy Rivera & Latimer-Jackson argued at the step 1 hearing that Plaintiff does not have OATH rights. She also recommended 45- and 65-day suspension on the first two sets of charges (Exhibit B &C.) According to CSL, the maximum penalty that can be imposed is 30 days suspension.

119.    At the step 1 hearing on 6/22/23, Defendant Latimer-Jackson was laughing and made

incoherent comments. The Plaintiff recorded the step 1 hearing.

120.    The ODA step 1 hearing officer & her supervisor Deputy director does not even

know the CSL and behaved like a 10-year-old. These people should be terminated. But will not happen because of their race.

***Claim Against Sylvia Hinds-Radix and Supreme Court Employee***

**121.**        The standard timeframe to process the RJI is usually 48 hours. On or around December 23, 2023,the Plaintiff went to RJI department met with an African American employee, and asked why the RJI was not processed. He pulled up the case and said it would be processed by the end of December. The Plaintiff left the Courthouse.

**122.**        On January 9, 2024, Plaintiff went to the RJI office and met with a supervisor Theresa Spillane. The Plaintiff asked why the RJI was still not processed. She said that they are backlogged. The Plaintiff asked whether she could process it then and assign a judge so he could move to amend the Complaint with leave of court. She refused. Her actions caused injuries since Plaintiff could not amend the complaint to include other false statements before the statute of limitation expires. Upon information and belief, Ms. Sylvia Hinds-Radix called (conspired) with Ms. Spillane asking her not to process the RJI.  As of today, the RJI is not processed. (Exhibit P.)

***Defendant Gamarra violated CSL §75***

123.        Defendant Gamarra violated CSL §75 when he did not provide any documentation to the Plaintiff to prepare for the charges but he was eager to get his choice of union rep for the hearing:

>                Q: Was -- was I given -- was I given any copies of what the allegations were or
>                anything prior to this meeting?

ALJ DAVIS: Was -- was -- Dr. Gamarra, was Mr. Goonewardena served with

any formal charges or specifications in advance of the January 11th -- 2023

meeting, yes or no?

MR. GAMARRA: No.

ALJ DAVIS: Was there any requirement that Mr. Goonewardena be served with

any formal disciplinary document or charges or specifications before this meeting

on January, 11th, 2023, yes or no?

MR. GAMARRA: No.

ALJ DAVIS: Okay. Next question, Mr. Goonewardena.

(Tr. 198:3-14)


**First claim for relief:**
**Race and Ancestry Discrimination in violation of**
**Section 1981 pursuant to Section 1983**

124.    Plaintiff repeats and realleges each allegation in each numbered paragraphs from

1-123.

**125.**    For the standard required for the 12 (b) (6) motion was taken directly from Colon

case 19 CV 10435. As such, all ruling in this case must follow Colon case.

126.    Defendants subjected Plaintiff to differential terms and conditions of employment

because of his race and ancestry and violated Plaintiff's rights under Section 1981 and the Equal

Protection Clause of the Fourteenth Amendment to the U.S. Constitution pursuant to Section

1983. (See unsigned Charges and specifications, Exhibit B-E.)

127.    Specifically, Plaintiff was subjected to adverse employment actions, including: (i)

accusing Plaintiff falsely; (ii) Being brought up on false disciplinary charges, unlike Hispanics,

white and blacks. (iii) created a hostile work environment by serving five frivolous sets of

charges that contains false accusations and accusations that are not legally actionable to Plaintiff's director and others.

128.     Defendants took the above actions to deprive Plaintiff of equal employment opportunities and other contractual opportunities on account of his race and ancestry.

129.     None of the Defendants were involved in hiring and working with the Plaintiff every day just violating his rights including liberty interests for prejudiced reasons. Because of Defendants' willful and deliberate actions, and as a proximate cause thereof, Plaintiff has been denied his right to equal employment opportunity in violation of Section 1981 pursuant to 1983.

## A. Section 1983 & 1981 claims

130.     Section 1981 "outlaws discrimination with respect to the enjoyment of benefits, privileges, terms, and conditions of a contractual relationship, such as employment." *Patterson v. Cnty. of Oneida*, N.Y., 375 F.3d 206, 224 (2d Cir. 2004); see also 42 U.S.C. § 1981(a). Section 1983 – which is not "a source of substantive rights" – "provides a method for vindicating. Federal rights elsewhere conferred, such as those conferred . . . by § 1981." Patterson, 375 F. 3d at 225 (citations and quotation marks omitted); see id. (explaining that § 1983 "allows an action at law against a 'person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws.'" (quoting 42 U.S.C. § 1983)).


131.     "'[T]he express cause of action for damages created by § 1983 constitutes the exclusive federal remedy for violation of the rights guaranteed in § 1981 by state governmental units.'" *Duplan v. City of New York*, 888 F.3d 612, 619 (2d Cir. 2018) (quoting *Jett v. Dallas*

*Indp. Sch. Dist.*, 491 U.S. 701, 733 (1989)) (emphasis in original); see also id. at 620-21

("Because § 1983 already provides a remedy against state actors, there is no reason to infer from

the rights-conferring language of § 1981(c) that it creates an additional, and duplicative, remedy.

. . . We . . .therefore join nine of our sister Circuits in concluding that § 1981 does not provide a

separate private right of action against state actors."). Employment discrimination claims and

retaliation claims brought pursuant to § 1983 are analyzed under the *McDonnell Douglas*

framework. *Bermudez v. City of New York,* 783 F. Supp. 2d 560, 575 (S.D.N.Y. 2011); *Radice v.*

*Eastport S. Manor Cent. Sch. Dist.*, 437 F. Supp. 3d 198, 209 (E.D.N.Y. 2020); see also

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). (Colon at p. 16.)


132.      Section 1983 Discrimination Claim To state a claim for employment

discrimination under Section 1983, a plaintiff must allege that the defendants "(1) act[ed] under

color of state law, and (2) . . . [that their] conduct deprived [the plaintiff] of a constitutional or a

federal statutory right." Bermudez v. City of New York, 783 F. Supp. 2d at 575; see also *Harris v.*

*Westchester Cnty. Dep't of Corr.*, No. 06 CIV. 2011 (RJS), 2008 WL 953616, at *9 (S.D.N.Y.

Apr. 3, 2008) ("to state a claim for damages under Section 1983, the plaintiff must allege

sufficient facts to demonstrate that defendants were personally or directly involved in the

violation, that is, that there was personal participation by one who had knowledge of the facts

that rendered the conduct illegal" (citation, quotation marks, and alteration marks omitted)).

133.      It is not disputed that Plaintiff was treated differently than blacks, Hispanics and

Whites, where blacks & Hispanics sexually harassed women were promoted, unqualified to do

the assign job, given pay races, does not even work (Michael Laidlaw, Gary Jenkins Defendant

Dinorah Nunez-White, Defendant Eric Smalls, Defendant Stephen Dickerson, Defendant Tyra

Branch and the rest of the Defendants).

## Second claim for relief:
### Selective Enforcement under the equal protection clause
### For bringing false disciplinary charges against the plaintiff
### Causing injuries and creating hostile work environment

134.    Plaintiff repeats and realleges each allegation in each numbered paragraphs from

1-134.

135.    The Equal Protection Clause of the Fourteenth Amended provides "that all

persons similarly situated should be treated alike." *Cleburne v. Cleburne Living Ctr.*, 473 U.S.

432, 439 (1985). To establish a selective enforcement claim, a plaintiff, ordinally, must show:

"(1) that [he], compared with others similarly situated, was selectively treated; and (2) that such

selective treatment was based on impermissible considerations such as race, religion, intent to

inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a

person." *Freedom Holdings, Inc. v. Spitzer*, 357 F.3d 205, 234 (2d Cir. 2004) (citation and

alteration marks omitted). "In short, a plaintiff must allege that he was treated differently than

others similarly situated as a result of intentional or purposeful discrimination," and "[t]o be

similarly situated," means that "the individuals with whom [the plaintiff] attempts to compare

[himself] must be similarly situated in all material respects." *Cook v. Dubois*, No. 19-CV-8317

(CS), 2021 WL 91293, at *6 (S.D.N.Y. Jan. 11, 2021) (citations and quotation marks omitted).

## B.    Municipal liability

**136.**    In prose cases, Judges in this Court had ruled there is no claim against

Municipalities for the individual defendants' actions. That is not correct.

137.    "[A] municipality cannot be held liable [under Section 1983] solely because it

employs a tortfeasor – or, in other words, a municipality cannot be held liable under § 1983 on a

respondeat superior theory." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978) (emphasis

in original). "Instead, it is when execution of a government's policy or custom, whether made by

its lawmakers or by those whose edicts or acts may fairly be said to represent official policy,

inflicts the injury that the government as an entity is responsible under § 1983." Id. at 694. Thus,

to prevail on a municipal liability claim under Section 1983, a plaintiff must prove: "(1) actions

taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4)

damages; and (5) that an official policy of the municipality caused the constitutional injury."

*Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008). To determine "'municipal liability, it is

necessary to conduct a separate inquiry into whether there exists a "policy" or "custom."'"

*Triano v. Town of Harrison, New York*, 895 F. Supp. 2d 526, 531 (S.D.N.Y. 2012) (citation

omitted); see also *Kucharczyk v. Westchester Cnty.*, 95 F. Supp. 3d 529, 538-39 (S.D.N.Y. 2015)

(discussing how a plaintiff may satisfy the "policy or custom" requirement). "Normally," a

plaintiff cannot satisfy this requirement "by pointing to a single instance of unconstitutional

conduct by a mere employee of the municipality." *Kucharczyk,* 95 F. Supp. 3d at 539 (citation,

quotation marks, and alteration marks omitted). Although "[a]t this stage, . . . Plaintiff need not

prove these elements, but still must plead them sufficiently to make out a plausible claim for

relief." Id. at 540.

**138.**    In analyzing Plaintiff's Section 1983 employment discrimination claims, Plaintiff

adequately pled that by Defendants bringing false disciplinary Charges where the recordings

support that the Defendants lied, violating laws & rules. However, Plaintiff does not have a claim

for loss of property interests as Plaintiff is still employed.

**139.**         Plaintiff adequately pled the existence of a "mosaic" of intentional discrimination when the (i)Defendants constantly harassed Plaintiff by serving five disciplinary charges that contain false allegations; (ii) EEO officer Eric Smalls (black race) retaliated by making false accusations on a conversation pursuant to the complaint Plaintiff filed with the EEO office which is a protected to the Executive Director of Office of Disciplinary affairs Dinorah Nunez-White to bring Plaintiff on charges, *supra,* and the labor relations director -- Denise Deprima referring to EEO office to bring charges against the Plaintiff for making a complaint with her office on the confidential (protected activity) information Ms. DePrima (white) obtained which is not even a violation; and the conflict resolution office Stephen Dickerson (black race)- solicited his assistant Tyra Branch to make an outrageous false accusation to Dinorah Nunez-White to bring Plaintiff upon charges. Plaintiff was single-handedly targeted by blacks, Hispanics and whites.

### Third claim for relief:
### Discrimination under NYCHRL
### For the false disciplinary charges
### And
### Hostile work environment
(Race and Ancestry Discrimination under the NYCHRL)

140.     Plaintiff repeats and realleges each allegation in each numbered paragraphs from 1-139.

141.     Under the NYCHRL, courts must apply a more liberal standard than that applied under other federal and state anti-discrimination statutes. See *Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 278 (2d Cir. 2009); *Bermudez*, 783 F. Supp. 2d at 592. "[C]ourts must

analyze NYCHRL claims separately and independently from any federal and state law claims";

"even if the challenged conduct is not actionable under federal and state law, federal courts must

consider separately whether it is actionable under the broader New York City standards." *Mihalik*

*v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013). Under the

NYCHRL, a plaintiff need only prove "by a preponderance of the evidence that [he] has been

treated less well than other employees because of [his race and ancestry].

142.    At all relevant times, Plaintiff was an "employee" within the meaning of the

NYCHRL.


143.    By adversely affecting the terms, conditions and privileges of Plaintiff's

employment because of his race and ancestry, Defendants violated the NYCHRL.

144.    It is not disputed that Defendant – Emily Tone-Hill (white race) at the

employment law division at the advice of her superior General Counsel Ann Scalia (white race)

& Paul Ligresti(white race) who did not hire the Plaintiff nor do they evaluated Plaintiff's

performance requested resignation from the plaintiff twice. (Exhibit K.) Then again, conspired

with the ODA step 1 hearing officer Cindy Rivera violating CSL § 75, that Ms. Emily Tone Hill

requested the termination on the fifth set of charges even before the step 1 hearing. (Exhibit I.)

145.    Plaintiff spent thousands of dollars fighting five sets of false, frivolous

disciplinary charges leveled against Plaintiff for filing a complaint with labor relations and EEO

office.

146.    The fact that the Defendants terminated Plaintiff's immediate supervisor – Andrei

Singh, who is South Asian, more proof that DSS discriminated against South Asians.

147.    Because of the foregoing, Plaintiff has suffered loss and damage in an amount to be determined at trial but estimated to be no less than $500,000.00.

## Fourth claim for relief:
## AGAINST ALL DEFENDANTS
## (Race and Ancestry Discrimination under the NYSHRL)

148.    Plaintiff repeats and realleges each allegation in each numbered paragraphs from 1-148.

149.    At all relevant times, Plaintiff was an "employee" within the meaning of the NYSHRL.

150.    By adversely affecting the terms, conditions and privileges of Plaintiff's employment because of his race and ancestry, Defendants violated the New York State Human Rights Law.

151.    By reason of the foregoing, Plaintiff has suffered loss and damage in an amount to be determined at trial but estimated to be no less than $500,000.00.

## Fifth claim for relief:
## AGAINST ALL DEFENDANTS
## (Retaliation in Violation of NYSHRL)

152.    Plaintiff repeats and realleges each allegation in each numbered paragraph from 1-51.

153.    Defendants above conduct was in retaliation for Plaintiff's complaints of discrimination to the EEO office, labor relations department, Special Investigations division and the DSS Commissioner Molly Park asking the individual Defendants' employment to be terminated and violated Plaintiff's rights under the NYSHRL.

154.    As of today, Labor Relations director Denise DePrima even attempted to

investigate the criminal conduct by the Defendant Charise Latimer-Jacksom, Ann Scalia, Emily

Tone-Hill, Paul Ligresti and Dinorah Nunez-White for enlisting an outside bodybuilder on June

22, 2023, when Plaintiff appeared for the step 1 hearing. (Exhibit R.) Defendant Charise

Latimer-Jackson stated at the hearing (recorded) that she enlisted the bodybuilder because the

secretary Sherkia Boone stated that Plaintiff threatened her. Ms. Boone testified after the

recording of her with the plaintiff at trial that Plaintiff did not threaten her., (Exhibit N.)


155.    All the various actions Defendants took against Plaintiff after he complained of

discrimination constitutes unlawful retaliation in violation of the NYSHRL.


156.    By reason of the foregoing, Plaintiff has suffered loss financially, emotional

trauma and damage in an amount to be determined at trial but estimated to be no less than

$100,000.00.


### Sixth claim for relief:
### AGAINST ALL DEFENDANTS
### (Retaliation in Violation of NYCHRL)

157.    Plaintiff hereby repeats and realleges each allegation in each numbered paragraph

above from 1-156.

158.    Defendants above conduct was retaliation for Plaintiff's complaints of

discrimination and violated Plaintiff's rights under the NYCHRL.

159.    All the various actions Defendants took against Plaintiff after he complained of

unlawful

and discrimination to the EEO office, labor relations, and special investigations division for

constituting unlawful retaliation in violation of the NYCHRL.

160.     By reason of the foregoing, Plaintiff has suffered loss and damage in an amount

to be determined at trial but estimated to be no less than $500,000.00

## Seventh claim for relief:
## Conspiracy based on personal interest
## Section 1983

161.     Plaintiff hereby repeats and realleges each allegation in each numbered paragraph

above from 1-160.

**162.     It is not disputed that based on** documentary evidence (email & trial transcript)

that each of these Defendants in different departments (EEO, Labor Relations Law Department

& ODA) conspired to violate Plaintiff's right to enjoy goods and services DSS has to offer

because of Plaintiff's race, color, and ancestry.

163.     Under the "personal stake" exception, the doctrine does not apply "when the

alleged conspirators are motivated by an improper personal interest separate and apart from that

of their principal." (collecting cases). As this Court has previously recognized various courts in

this district have applied the doctrine to § 1983 claims.

## Eighth claim for relief:
## U.S. Constitution 14th Amendment due process claim

164.     Plaintiff hereby repeats and realleges each allegation in each numbered paragraph

above from 1-163.

## A. Harassment and retaliation

165.    Defendants violated Liberty and property interests in discrimination-, harassment-, and retaliation-free workplace.

166.    Defendants violated Liberty interest in practicing Plaintiff's profession without stigma imposed by state officials to her "good name and reputation"

167.    Courts in this circuit have recognized procedural due process claims where the plaintiff was deprived of procedural due process as a result of retaliatory actions. See, e.g., *Parra v. Fischer,* No. 11-cv-6518, 2012 WL 3069952, at *5 (W.D.N.Y. July 27, 2012) (providing false testimony against an inmate motivated by desire to retaliate against inmate's exercise of substantive constitutional rights constitutes due process violation where inmate is denied procedural protections allowing him to clear his name); *Williams v. Foote*, No. 08-cv-2838, 2009 WL 1520029, at *11 (C.D. Cal. May 28, 2009) (finding plaintiff was not afforded due process where a false disciplinary report was filed against him in retaliation for plaintiff exercising a constitutional right and he was deprived of procedural due process in connection with the proceedings flowing from the false report, resulting in the deprivation of a cognizable liberty interest). Moreover, Plaintiff claims here also, that the cognizable liberty or property interest is the right to a retaliation-free workplace.

168.    Currently, under due process, Plaintiff does not have a claim for loss of property interest claim since he is still employed.

*Liberty interest-stigma plus claim*

169.      A "stigma plus" claim and requires that the plaintiff allege "(1) the utterance of a statement about her that is injurious to her reputation, that is capable of being proved false, and that . . . she claims is false, and (2) some tangible and material state-imposed burden." *Velez v. Levy,* 401 F.3d 75, 87 (2d Cir. 2005) (internal citation and quotation marks omitted). The Second Circuit has recognized that "[w]hile there is no 'rigid requirement [] that both the 'stigma' and the 'plus' must issue from the same government actor or at the same time, 'they must be sufficiently proximate.'" *Mudge v. Zugalla,* 939 F.3d 72, 80 (2d Cir. 2019) (quoting *Velez,* 401 F.3d at 89). This requirement is satisfied where "(1) the stigma and plus would, to a reasonable observer, appear connected . . . and (2) the actor imposing the plus adopted (explicitly or implicitly) those statements in doing so." Velez, 401 F.3d at 89.

170.      Defendant Tyra Branch who Plaintiff never met falsely stated, " Shortly after, you stopped Office of Conflict Resolution staff member Tyra Branch on her way to her work area and asked her if her name is Petal. When she responded "no" you proceeded to point to your hand with your finger while rubbing your hand and obnoxiously said, " Are you sure, because you look like." Your hand gesture was inappropriate and offensive because it implies that Ms. Branch and Petal Looked alike due to their skin color." (Exhibit C. P. 4.) Plaintiff never met the individual named Petal & Tyra Branch. The Plaintiff met them for the first time at trial. Ms. Petal Harlow confirmed that at trial. Ms. Branch testified: that this alleged encounter happened before 10 am as she was entering the front area. The problem is that she is not on the video footage from 9:00 am to 11:31 am when Plaintiff entered and left the 31st floor. The only people captured on

video were the bodybuilder, the Plaintiff, Sherkia Boone, FJC security person, Stephen Dickerson, and the union representative.

171.    Ms. Branch, however, stated that her supervisor, Stephen Dickerson told her to put the false statements (Exhibit N) in writing to bring the Plaintiff on charges.

172.    She covered her tracks by not signing and notarizing the note so it would not be in acceptable form in a court of law. Ms. Branch acknowledged that the notary April Hill was on the floor.

## Ninth claim for relief: Conspiracy
## Pursuant to section 1983

173.    Plaintiff hereby repeats and realleges each allegation in each numbered paragraph above from 1-172.

174.    The Plaintiff's claim for conspiracy against Sylvia Hinds-Radix and Theresa Spillane is

in their personal capacity, not official capacity. Plaintiff filed defamation and other tort claims against Defendant DePrima in New York Supreme Court on or around 6/30/23 under index no. 301348/2023.

**175.**    The Plaintiff filed for RJI on 12/4/23.

**176.**    Defendant Sylvia Hinds-Radix is one of the most evil, racist women in America. She had been sued over 25 times when she was a judge. The cases were dismissed as she was afforded Judicial immunity. She has limited legal knowledge. That is why she was ousted by Mayor Eric Adams. She gets government jobs because of her connections, and it is a feel-good story: The first black woman from Barbados.

**177.**      Ms. Hinds-Radix act is not protected by judicial immunity as she was not a Judge

   when

she conspired with the Supreme Court employees to cause Plaintiff injuries.

178.      The RJI is still not processed. It has been 8 months.

**179.**      The Plaintiff is going to remove that action, to combine with this action.

## Tenth claim for relief: Defamation

180.      Plaintiff hereby repeats and realleges each allegation in each numbered

paragraph above from 1-179.

181.      A defamatory statement is one "that exposes an individual to public hatred,

shame, obloquy, contumely, odium, contempt, ridicule, aversion, ostracism, degradation, or

disgrace, or . . . induces an evil opinion of one in the minds of right-thinking persons." *Karedes v.*

*Acklerley Grp., Inc.,* 423 F.3d 107, 113 (2d Cir. 2005) (quoting *Celle v. Filipino Reporter Enters.,*

209 F.3d 163, 177 (2d Cir. 2000)) (internal quotation marks omitted). To establish a claim for

defamation under New York law, a plaintiff is required to allege: "(1) a false statement about the

plaintiff; (2) published to a third party without authorization or privilege; (3) through the fault

amounting to at least negligence on [the] part of the publisher; (4) that either constitutes

defamation per se or caused 'special damages.'" *Boehner v. Heise*, 734 F. Supp. 2d 389, 397-98

(S.D.N.Y. 2010) (quoting *Gargiulo v. Forster & Garbus, Esqs.*, 651 F. Supp. 2d 188, 192

(S.D.N.Y. 2009)) (alteration in original). In determining whether Plaintiff has adequately pleaded

a cause of action for defamation, "the words must be construed in the context of the entire

statement or publication as a whole, tested against the understanding of an average reader."

*Dillon v. City of N.Y.*, 261 A.D.2d 34, 38 (1st Dep't 1999). If they are not "reasonably susceptible

of a defamatory meaning, they are not actionable." Id.

182.    The false statements by Tyra Branch, Dinorah Nunez-White, Ann Scalia, Eric

Smalls, Venessa Faison, Caroline Hernandez & Alexander Stadnyk - at the direction of Frank

Pira,  five sets of specifications and charges were emailed to Plaintiff's director and the deputy

commissioner by email, publishing them in their database to be served on the Plaintiff. ODA

Nos,: 1412014-01 & 05 were email to Nation Wide Court Services representative Hector

Pacheco by email. Mr. Pacheco in returned print the documents that contained false statements,

read and gave to process serve to serve on the plaintiff. The documents were carried by a process

server as an open document - not in an envelope and gave to a visitor- Soraya Azra that was in

Plaintiff's house. The visitor confirmed that she read the documents and put them by Plaintiff's

door. The visitor said, "I can't believe that these people did not put the documents in an

envelope."

183.    A week ago, Plaintiff's director told Plaintiff, "I know you. I don't believe what

they are saying. I want to keep my team together. I hope OATH dismisses all charges."

184.    The evidence shows that Plaintiff's director and his deputy commissioner read and

was trying to figure out what to make out of the Defendant's accusations.

### Thirteenth claim for relief:
### Conspiracy Libel

185.    Plaintiff hereby repeats and realleges each allegation in each numbered

paragraph above from 1-184.

186.    The Defendants conspired with each other by making false statements against the

Plaintiff to cause injuries.

## Eleventh claim for relief:
## Garden variety emotional distress

187.        Plaintiff hereby repeats and realleges each allegation in each numbered paragraph

above from 1-186.


188.        The Plaintiff is traumatized by the harassment by the Defendants. They served not

one, not two five frivolous sets of charges that contained false statements delivered to various

individuals by email.

### Twelfth claim for relief:
### U.S. Constitution 1st Amendment retaliation

189.        Plaintiff hereby repeats and realleges each allegation in each numbered paragraph

above from 1-188.


190.        The Plaintiff was retaliated for comments he made exercising the U.S.

Constitution 1st Amendment.


### Fourteenth claim for relief:
### Retaliation for filing an EEO complaint

191.        Plaintiff hereby repeats and realleges each allegation in each numbered paragraph

above from 1-190.

192.        Defendants conspired with EEO officers Eric Smalls and Dennis Whinfield to

solicit them to file charges against Plaintiff for filing a discrimination complaint against Hispanic

and African American employees.

193.     Defendants retaliated for engaging in a protected activity- filing discrimination complaint with the EEO office.

**Fifteenth claim for relief: CSL Section 75**

194.     Plaintiff hereby repeats and realleges each allegation in each numbered paragraph above from 1-193.

195.     The Plaintiff requests relief pursuant to CSL §75.

**196.     Plaintiff received appraise from his director Robyn Battle. (Exhibit S.)**

**197.     Plaintiff received outstanding evaluation from his director Robyn Battle and the deputy commissioner Sheronda Williams.**

**Prayer for relief**

**198.     Plaintiff requests** compensatory damages in the amount of five hundred thousands dollars ($500,000.00)

**199.     Plaintiff** requests punitive damages in the amount of five hundred thousand dollars ($500,000.00);

**200.     Emotional** damages in the amount of five hundred thousand dollars ($500,000.00);

**201.     And** any other relief this court may deem and proper.

Dated: July 23, 2024                         Respectfully submitted,
      New York, NY

Prasanna Goonewardena

Exhibit
A

Case 1:24-cv-05554-MMG-RFT    Document 1    Filed 07/24/24    Page 45 of 119

7/21/24, 11:49 AM          Exclusive: The Head of Human Resources for NYC Social Services Was Allowed To Resign After Groping, Sexually Harassing Ass...

# BRONX JUSTICE NEWS

OUR MISSION      DONATE      POLICIES      CONTACT US

# Exclusive: The Head of Human Resources for NYC Social Services Was Allowed To Resign After Groping, Sexually Harassing Assistant

🕒 April 4, 2019   👤 Kevin Deutsch   🗁 Lawsuits   💬 1

SEARCH …

MOST POPULAR STORIES



### The Bronx Lags in COVID Vaccinations: Data
🕒 May 30, 2021   💬 0



### Remote Learning to End in NYC Schools This Fall
🕒 May 24, 2021   💬 0



### CDC Approves Use of COVID Vaccines for Kids 12 to 15
🕒 May 12, 2021   💬 0



### Bronx Man Charged with Anti-Asian Hate Crime

7/21/24, 11:49 AM    Exclusive: The Head of Human Resources for NYC Social Services Was Allowed To Resign After Groping, Sexually Harassing Ass…

Case 1:24-cv-05554-MMG-RFT    Document 1    Filed 07/24/24    Page 46 of 119



⊙ April 19, 2021   ⚲ 0



### COVID Vaccines Being Sent to Bronx Colleges

⊙ April 12, 2021   ⚲ 0

**Pictured: Michael Laidlaw, formerly the Executive Deputy Commissioner of DSS' Office of Staff Resources – effectively the head of human resources – groped his assistant Jacqueline Torres at a work event and sexually harassed her, investigators found. Credit: LinkedIn**

**By Kevin Deutsch**
kdeutsch@bronxjusticenews.com

The head of Human Resources for the city's **Department of Social Services** was allowed to resign quietly after investigators substantiated a claim that he groped his assistant at a work event and sexually harassed her, *Bronx Justice News* has learned.

Michael Laidlaw, formerly the Executive Deputy Commissioner of DSS' Office of Staff Resources, grabbed Special Assistant Jacqueline Torres' buttocks at an off-site office gathering in March 2016 as part of his pattern of harassment against her, city investigators found.

The Equal Employment Opportunity complaints filed by Torres that month were "swiftly investigated and substantiated" by DDS, an agency official with knowledge of the probe said.

In August 2016, the agency began a process that would have led to Laidlaw's firing, the official said.

Instead, Laidlaw resigned quietly with no public announcement made about the groping incident or harassment at the nation's largest social

Case 1:24-cv-05554-MMG-RFT    Document 1    Filed 07/24/24    Page 47 of 119

service agency.

Laidlaw is not alone – several other city employees have been **pushed out** of their jobs in recent years following substantiated sexual harassment claims, without the reasons for their departures being publicly disclosed by the city.

Laidlaw's exit from one of DSS' top positions was **first reported** by *Bronx Justice News* Tuesday, after Torres filed a sexual harassment **lawsuit** in Bronx Supreme Court seeking damages from the city as well as Laidlaw. Laidlaw's departure from the agency, and the substantiated groping and harassment claims against him, had not previously been made public.

"There is no place for harassment of any kind in our City," Social Services Spokesman Isaac McGinn said. "We take concerns like this very seriously, investigate thoroughly, and moved to terminate Mr. Laidlaw upon substantiating the complaints in this case. Mr. Laidlaw resigned under threat of termination."



*Pictured: Jacqueline Torres is suing the city's Department of Social Services and former Executive Deputy Commissioner Michael Laidlaw, who city investigators confirmed groped her at a work event. Her suit alleges that a "culture of sexual harassment" exists within the agency. Credit: LinkedIn.*

DSS is comprised of the administrative units of the NYC Human Resources Administration and the Department of Homeless Services. It oversees most of the city's social service programs.

Case 1:24-cv-05554-MMG-RFT     Document 1     Filed 07/24/24     Page 48 of 119

Torres, a Bronx resident, alleged in her suit that a "culture of sexual harassment" exists within the agency.

At the event where Laidlaw grabbed her, he also "danced inappropriately with a subordinate" while DSS executives stood by laughing, the suit states.

One of those executives was Gary Jenkins, now the First Deputy Commissioner for the city's Human Resources Administration, who Torres says told her, "Go get your boss. It is your job to keep him out of trouble," before he broke into laughter, the suit alleges.

The other official was Tom Colon, Deputy Commissioner for the Office of Staff Resources, Torres said.

Both Jenkins and Colon previously had multiple sexual harassment complaints filed against them, but DSS "did nothing to stop their behavior," and even gave them pay increases, Torres claims in her suit.

Both men were seen on video at the off-site event laughing at Laidlaw's inappropriate behavior, the suit alleges.

Efforts to reach Laidlaw, Jenkins, and Colon for response to the lawsuit were unsuccessful.

The DSS official with knowledge of the probe said there have been "no substantiated EEO complaints against Colon or Jenkins."

Torres said her problems didn't end with Laidlaw's resignation.

She claims DSS higher-ups loyal to their old boss retaliated against Torres by removing her access to internal computer systems, curtailing her authority, and spreading rumors meant to harm her reputation and credibility.

The behavior of her colleagues led Torres, a retired Army Major who worked in human resources for the military branch, to seek a job in a different department – a change she said amounted to a demotion and which derailed Torres' career, she said.

Despite the transfer, DSS executives and employees continued to spread confidential information about Torres' complaint, making her employment at the agency intolerable, she said.

The DSS official said "corrective action" was taken with employees who inappropriately spoke to Torres about her claims against Laidlaw, including "providing direct counseling, warnings, and retrainings on necessary protocol for formally referring and escalating any and all such complaints."

Torres, who had earned a $96,000 salary in Human Resources, left for a job that paid $30,000 less because of the ongoing harassment, the suit alleges.

The DSS official denied Torres' claim that she was effectively demoted before her departure.

"While at the Agency, Ms. Torres voluntarily sought a position with a different department within the Agency where she received the same salary — allegations of demotion are not accurate."

In an Oct. 21 e-mail to Bronx Justice News, Lori Blair, a Texas-based attorney retained by Laidlaw, said: "In over 35 years of his career fighting inequities, Mr. Laidlaw has never had a complaint, grievance, or lawsuit filed against him. That not one person joined Ms. Torres in her lawsuit or grievance illuminates the falsehood of there being multiple complaints regarding our client."

Blair said "there was no complaint filed" against Laidlaw alleging he ever danced inappropriately with a subordinate; an allegation made in Torres' lawsuit.

"Our client resigned his position rather than subject himself to a process he knew would be unfairly used to undermine his effectiveness," wrote Blair. "Mr. Laidlaw understood from his experiences that the process is the punishment and this unmerited complaint would cast a cloud over his leadership."

Blair said Torres' lawsuit "is still ongoing and may in fact be dismissed (a dismissal hearing in the case is scheduled soon). Justice, in this instance, has not yet run its course and Mr. Laidlaw's defense should be allowed to be fully heard before any allegations are reported as true."

*This story has been updated.*

DEPARTMENT OF SOCIAL SERVICES          GARY JENKINS

JACQUELINE TORRES          TOM COLON

## About Kevin Deutsch > 265 Articles

Kevin Deutsch is a Staff Writer for Bronx Justice News covering the criminal justice system, drugs, and DNA use by law enforcement. An award-winning journalist, Deutsch is the author of the true crime books "Pill City" and "The Triangle." He has worked on staff at the Daily News, Miami Herald, Newsday, The Palm Beach Post, and The Riverdale Press. His work has also appeared in Newsweek, Columbia Journalism Review, The New York Times, The Village Voice, The Forward, The Independent, Huffington Post, Orlando Sentinel, and the New York Post, among other publications. His numerous television appearances include spots on CNN, MSNBC, and C-SPAN's BookTV. He has also been featured in The New Yorker. A Bronx resident, Deutsch hosts the true crime podcast "A Dark Turn" on the Authors on the Air Global Radio Network.

 **« PREVIOUS**
Man Sentenced To Life For Killing Two Bronx Livery Drivers

**NEXT »**
One Man Killed, Another Wounded by Gunfire in Bronx 

1 TRACKBACK / PINGBACK

🔗The "One More Thing in the List of What Can Kill Us in the City" Edition

Comments are closed.

Copyright © 2024 | WordPress Theme by MH Themes

Exhibit B

your email and block your access to your work email, and for making false statements against you to your co-workers. Subsequently, you sent an email dated on or about January 13, 2023, proposing that if a written disciplinary statement is withdrawn, that you would agree not to contact anyone in the future, and you can move forward with a warning and a handshake; however, if a written disciplinary statement is submitted, it would be escalated to litigation.

**Your behavior and actions violated the DSS-HRA-DHS rules contained below in numerals I-XI.**

**SPECIFICATION II:**
On or about January 10, 2023, during a phone call with EEO Counselor/Investigator Eric Smalls of the Office of Equal Employment Opportunity (EEO) called you to gather information regarding the EEO complaint you filed on or about January 8, 2023, you improperly asked Mr. Smalls whether he was of African American descent, stating that you did not believe you would be assisted fairly by an African American employee. Subsequently, you inquired who Mr. Small's supervisor was, and Mr. Smalls informed you that the name of his supervisor was Dennis Whinfield, to which you inappropriately replied, *"He sounds like a black man also! An Irish man helped me before and he was nice!* You were informed that your complaint would be investigated; however, you were unhappy to hear that. Your communications with Mr. Smalls with were inappropriately and racially derogatory, in violation of Agency policy. **Your behavior and actions violated the DSS-HRA-DHS rules contained below in numerals I-XI.**

**SPECIFICATION III:**
On or about January 19, 2023, you sent an email to supervisor Andrei Singh, advising him that until he responds to your inquiry regarding the dress code, you will be wearing sneakers and t-shirts to work, because you witnessed Executive Director Albert Gamarra wearing the same to work, and that supervisor Andrei Singh is to advise you if this was a violation of the dress code. Supervisor Andrei Singh advised you that all staff must adhere to the policies and procedures, and you may seek Reasonable Accommodations through the Employee Online Request to wear sneakers to work. Although supervisor Andrei Singh provided you with guidance regarding your inquiry regarding the dress code, you disregarded his response and defiantly responded that you will be wearing sneakers and t-shirts to work. **Your behavior and actions violated DSS-HRA-DHS rules contained below in numerals I-XI.**

**SPECIFICATION IV:**
On or about March 2, 2023, although you had been notified numerous times to adhere to the chain of command, you were insubordinate and continued to violate the chain of command when you sent an email to Executive Director Albert Gamarra and included Chief External Affairs Officer Maritere Arce and Executive Director of Operations Sonia Daly to make a request to review your personnel folder. You accused the supervisory/management staff of harassment and retaliation, and for submitting false information in your personnel folder. You demanded a response to your request and inquiries before 4 pm that day. Executive Director Albert Gamarra responded that the Agency adhered to Agency policy as it relates to conferencing you in the presence of your union delegates. Executive Director Albert Gamarra reminded you again that, although, on numerous occasions you were warned of violating the chain of command, you had continued to violate the

3

Agency's policy as it relates to adhering to the chain of command. You again responded to Executive Director Albert Gamarra that Ms. Arce was the External Affairs Officer, and that you had a right to contact her office, and that you were not going to stop, unless Ms. Arce's office sends you a direct message that they were refusing to investigate your concerns. You also requested that Mr. Gamarra refrain from including Union Local 371 so they could provide representation to you, and you again demanded a response to your inquiry. Subsequently, Mr. Gamarra notified you to contact Myrta King, and provided you with Ms. King's email address in order to set up an appointment to review your personnel folder and reminded you again that violations of the Agency's Code of Conduct would be recorded and submitted to the Office of Disciplinary Affairs (ODA). You responded to Mr. Gamarra, requesting that he refrain from adding Executive Director of Operations Sonia Daly to any communications regarding you; although, you included Ms. Daly in your original email. You then accused Mr. Gamarra of copying verbiage from a lawyer, and that the lawyer can send you a message directly. You improperly told Mr. Gamarra that superiors must follow directives from employees as well. Although you were notified of the contact person to review your HRA Personnel folder, on or about February 7, 2023, via email you contacted the Office of Disciplinary Affairs (ODA), requesting copies of all negative comments in your file.
**Your behavior and actions violated DSS-HRA-DHS rules contained below in numerals I-XI.**

## SPECIFICATION V:
On or about May 24, 2022, you sent an email to your supervisor Andrei Singh, Deputy Director Charmaine Harvey, Deputy Director of Program Integrity Maria Feliu, and Executive Director Albert Gamarra with a work-related suggestion. The following day, you sent a similar email to Executive Director of Operations Sonia Daly and Assistant to the Commissioner Colette Samman. Mr. Gamarra informed you that your suggestion would be reviewed and reminded you that you must adhere to the chain of command. You responded that you did not think that sending copies to parties of Operations was a violation of the chain of command. Your insubordinate behavior again violated the chain of command, which you have been notified of repeatedly. **Your behavior and actions violated DSS-HRA-DHS rules contained below in numerals I-XI.**

## SPECIFICATION VI:
On or about October 31, 2022, you sent Executive Director Albert Gamarra an email accusing Director Charmaine Harvey of allegedly continuing to make defamatory statements against you to staff, and that she had created a quid pro situation. You stated that your supervisor Andrei Singh's conduct became erratic due to Director Charmaine Harvey's influence and *"Quid Pro Deal!"* You threatened to take legal action and claimed that you would obtain supervisor Andrei Singh's records regarding his absence for 154 days from work. You requested Executive Director Albert Gamarra to not share the email with Director Charmaine Harvey and supervisor Andrei Singh, and to not retaliate against you. You stated in a disrespectful manner that *"Low class people behave this way!"* and you requested a transfer. **Your behavior and actions violated DSS-HRA-DHS rules contained below in numerals I-XI.**

**Your behavior and actions, described above, violated the following DSS-HRA-DHS rules:**

4

ODA Tracking No. 1412014-01

**I:**    You violated DSS-HRA-DHS Code of Conduct, Executive Order No. 748, Section II-A (2), *Standards of Conduct*, which states in relevant part, "Employees shall be courteous and considerate in their contact with the public and with other employees at all times. Employees are expected to conduct themselves in a manner which will reflect favorably upon them, the Agency, and the City. Employees are not to conduct themselves in a manner prejudicial to good order and discipline.

**II:**    You violated DSS-HRA-DHS Code of Conduct, Executive Order No. 748, Section II-D (1), *Standards of Conduct*, which states in relevant part, "Employees shall be courteous and considerate in their contact with fellow employees at all times. All personnel should work to maintain an atmosphere of appreciation of the diversity reflected in our staff and to promote understanding among our co-workers."

**III:**    You violated DSS-HRA-DHS Code of Conduct, Executive Order No. 748, Section III-B (1*)*, *Performance of Duties*, which states in relevant part, "Employees shall obey all regulations and orders of their supervisors. All orders issued, oral or written, by supervisory personnel must be obeyed immediately, despite advice offered by labor representatives. If the employee believes a particular directive is inconsistent with the terms of the existing labor contract or existing law, they must nevertheless obey the order and then file a grievance through the proper channels. Each employee shall consult with their direct supervisor if they believe they have a problem or grievance before consulting their supervisor's superior."

**IV:**    You violated DSS-HRA-DHS Code of Conduct, Executive Order No. 748, Section III-B (2), *Performance of Duties*, which states in relevant part, "Each employee shall perform all duties which are imposed by law or by the employee's tasks and standards. Employees are expected to carry out all work assignments given to them by their supervisor as accurately and efficiently as possible. If, for any reason, an employee is unable to carry out an assignment within the prescribed time period, they shall promptly notify their immediate supervisor, giving specific reasons for their inability to do so."

**V:**    You violated DSS-HRA-DHS Code of Conduct, Executive Order No. 748, Section III-B (3), *Performance of Duties*, which states in relevant part, "Employees shall not engage in any conduct detrimental to the Agency or which would undermine the effectiveness of the employee in the performance of their duties."

**VI:**    You violated DSS-HRA-DHS Code of Conduct, Executive Order No. 748, Section I-D (1), *Interactions with colleagues*, which states, "Employees shall be courteous and considerate in their contact with fellow employees at all times. All personnel should work to maintain an atmosphere of appreciation of the diversity reflected in our staff and to promote understanding among our co-workers."

**VII:**    You violated DSS-HRA-DHS Code of Conduct, Executive Order No. 748, Section V-A (4), *False Statements/Falsifying records*, which states, "Employees shall not falsely claim an illness or injury; nor shall employees make any false statements about the severity, or any other aspect of, an illness or injury."

5

ODA Tracking No. 1412014-01

**VIII:**   You violated DSS-HRA-DHS Code of Conduct, Executive Order No. 748, Section VIII-A, *Non-Discriminatory Practices and Respectful Workplace-Creating a Respectful Workplace*, which states, "Employees are expected to maintain a respectful and bully-free workplace. This includes refraining from any actions and behaviors that can be considered: workplace bullying, abusive conduct, creating an abusive work environment, and/or inappropriate disrespectful workplace behavior. Employees are expected to familiarize themselves with the Maintaining a Respectful and Bully-Free Workplace Informational so they will be aware of acceptable and unacceptable behaviors in the workplace and will know how to receive assistance if they are experiencing workplace bullying or are being treated with disrespect as indicated in the Informational."

  *1)*   Employees shall not use obscene, abusive, or inappropriate language with a client, supervisor, fellow employee, or private citizen.

  *2)*   Employees shall not use offensive, obscene or sexual language or gestures or ethnic slurs toward any participant, employee, or private citizen.

**IX:**   You violated DSS-HRA-DHS Code of Conduct, Executive Order No. 748, Section VIII-B (1) & (3), <u>Anti-Discriminatory Practices,</u> "Employees are expected to refrain from discriminating against and from performing any act, whether by speech, writing or dissemination of printed or recorded material or by any other means, which may tend to arouse hatred or ill will against any individual or group on the basis of their: age; alienage/citizenship; arrest/conviction record caregiver status; color; consumer credit history; disability; familial status; gender/including gender identity/pregnancy; genetic predisposition; marital status; military status; national origin; partnership status; pay history race; religion/creed; retaliation for filing a complaint or assisting in the investigation of an EEO complaint; sexual orientation; sexual harassment; sexual and reproductive health decisions; unemployment status; victim of domestic violence' sex offenses, or stalking; and. This basic policy shall be applied in all dealings with persons seeking or receiving the services of the Agency, and in the recruitment, assignment, and promotion of staff and in other aspects of employment. (See also HRA Informational Nos. 05-17 (DSS-HRADHS Reasonable Accommodation Policy and 02-17 (DSS-HRA-DHS Sexual Harassment Policy), Procedure No. 17-11 (Revised EEO Complaint and Investigation Procedures), I-02-09 DSS-HRA-DHS EEO Policy Revised and the NYC EEO Policy."

  •   "In an instance of discrimination or retaliation against an employee, applicant for employment, or participant, the person engaging in the discriminatory practice is subject to disciplinary action by the Agency as well as to the sanctions and penalties imposed by the courts and regulatory agencies such as the United States Equal Employment Opportunity Commission, the New York City Commission on Human Rights and the New York State Division of Human Rights."

6

ODA Tracking No. 1412014-01

**X:**     You violated DSS-HRA-DHS Code of Conduct, Executive Order No. 748, Section IX (2), *maintaining a Non-Violent Workplace*, "Employees shall not threaten or intimidate a client, supervisor, fellow employee, or private citizen."

**XI:**    You violated DSS-HRA-DHS Code of Conduct, Executive Order No. 748, Section X-A (1), *Use of Agency Equipment, Facilities, Property*, and Supplies, "Employees shall not engage in any non-Agency activity during working hours, nor use any Agency premises to conduct non-Agency matters."

7

THE STATE OF NEW YORK
THE CITY OF NEW YORK DEPARTMENT OF SOCIAL SERVICES/ HUMAN RESOURCES

Index No.: 1412014-01
Filed On:

IN THE MATTER OF DISCIPLINARY CHARGES AND SPECIFICATIONS RELATING TO:

-against-

**Affidavit of Service by Mail**

**PRASANNA GOONEWARDENA**

STATE OF NEW YORK, COUNTY OF NEW YORK: Hector Pacheco, being duly sworn, deposes and says that deponent is not party to this action, is over 18 years of age and resides in the State of New York.

That on 5/18/2023, your deponent mailed a true copy of the CHARGES AND SPECIFICATIONS NOTICE OF INFORMAL CONFERENCE NOTICE OF SECTION 75 HEARING NOTICE OF STEP II GRIEVANCE HEARING WITH EXHIBITS A AND 300B by Certified Mail properly enclosed and sealed in a postpaid wrapper addressed to the recipient at: 247-34 A 77 CRESCENT , BELLEROSE, NY 11426 in an envelope bearing the legend "Personal and Confidential".  Said envelope was deposited in an official depository under exclusive care and custody of the U.S. Postal Service. Certified Mail receipt number : 70222410000139374339.

PRASANNA GOONEWARDENA

247-34 A 77 CRESCENT
BELLEROSE, NY  11426

Certified Mail receipt number : 70222410000139374339.

Sworn to before me on 5/18/2023:

LAURANCE KNOX
Notary Public, State of New York
No. 01KN6309229
Qualified in QUEENS County
Commission Expires 08/04/2026

Hector Pacheco

NYC Human Resources Administration  quiles 261
4 WTC, 150 Greenwich Street, 38th Floor
New York,NY 10038
Phone: 212-274-6590
File No. quiles 261

RETURN TO: Nationwide Court Services, Inc.
20 VESEY ST REAR LOBBY
NEW YORK, NY 10007
Agency DCA License#: 1037536 Ph: 212-349-3776
(NCS848152)HLP 1165046

**THE STATE OF NEW YORK**
THE CITY OF NEW YORK DEPARTMENT OF SOCIAL SERVICES/ HUMAN RESOURCES

Index No.: 1412014-01
Filed On:

IN THE MATTER OF DISCIPLINARY CHARGES AND SPECIFICATIONS RELATING TO:

-against-

Affidavit of Service
Suitable Age and Discretion

**PRASANNA GOONEWARDENA**

STATE OF NEW YORK, COUNTY OF : Calvin H. Chen, being duly sworn, deposes and says that deponent is not party to this action, is over 18 years of age and resides in the State of New York.

That on 5/17/2023 at 11:12 AM at 247-34 A 77 CRESCENT , BELLEROSE, NY  11426, your deponent served the CHARGES AND SPECIFICATIONS NOTICE OF INFORMAL CONFERENCE NOTICE OF SECTION 75 HEARING NOTICE OF STEP II GRIEVANCE HEARING WITH EXHIBITS A AND 300B bearing index # 1412014-01 upon PRASANNA GOONEWARDENA , by delivering a true copy to a person of suitable age and discretion, to wit:  ari afta, who verified that the intended recipient actually resides at this location,

Your deponent describes the person so served to the best of deponent's ability at the time and circumstances of service as follows:

Gender:     Female
Skin Color:    Brown
Hair Color:    Black
Approximate Age:    60-65
Approximate Height:    5ft0in-5ft3in
Approximate Weight:    131-150 lbs
Other Information:

During service of the documents, your deponent has adhered to current CDC and NYS Department of Health Guidelines.

Sworn to before me on :   5/22/23

Calvin H. Chen
NYC License # - 1418703

NYC Human Resources Administration  suites 261
4 WTC, 150 Greenwich Street, 38th Floor
New York, NY 10038
Phone: 212-274-6988
File No. suites 261

RETURN TO: Nationwide Court Services, Inc.
20 VESEY ST REAR LOBBY
NEW YORK, NY 10007
Agency DCA License#: 1037539 Ph: 212-349-3776
(NCS945162)HLP 1185045

Exhibit C

THE CITY OF NEW YORK
DEPARTMENT OF SOCIAL SERVICES-HUMAN
RESOURCES ADMINISTRATION-DEPARTMENT OF
HOMELESS SERVICES                                              X

In the Matter of Disciplinary Charges
and Specifications Relating to:

Name:        PRASANNA GOONEWARDENA

Title:       FRAUD INVESTIGATOR (31113-01)

Location:    250 LIVINGSTON STREET, 4TH FL.
             BROOKLYN, NEW YORK  11201

Address:     247-34 A 77 Crescent
             Bellerose, New York 11426

Respondent.                                                     X

CHARGES AND SPECIFICATIONS
NOTICE OF INFORMAL CONFERENCE
NOTICE OF SECTION 75 HEARING
NOTICE OF STEP II GRIEVANCE HEARING

ODA No. 1412014-02

Mr. GOONEWARDENA:

In accordance with Section 75 of the Civil Service Law, you are hereby notified that the charges and specifications relating to Misconduct and/or Incompetence detailed in Exhibit "A" attached hereto and made a part hereof, are preferred against you.

You are allowed eight (8) days from receipt of this notice to serve upon the undersigned a WRITTEN ANSWER to the charges set forth in Exhibit "A". **The filing of an answer is optional.**

In order to resolve these charges, an INFORMAL CONFERENCE will be held before **Cindy Rivera**, an Informal Conference Holder**, on the 28th day of August 2023, at 10:00 AM, at 4 World Trade Center/150 Greenwich Street – 31st Floor, (Reception Desk) New York, New York 10007**, at which you may appear and be represented by counsel of your own choice and/or by a union representative. **You should immediately contact your union or attorney about this matter.**

The Informal Conference Holder shall issue a written recommendation following the conference. The Informal Conference Holder may dismiss or sustain the charges and recommend an appropriate penalty which may consist of a reprimand, a fine or suspension, a demotion, or dismissal.

If the charges are sustained, you are allowed five (5) workdays from receipt of the Informal Conference Holder's recommendation to choose whether to accept the penalty, refuse the penalty and proceed with a Section 75 hearing, or elect the Grievance Procedure if you are in a title covered by a union contract with the City of New York.

If you accept the Informal Conference Holder's recommendation, you will be required to sign a waiver of your right to the procedures available to you under Section 75 and 76 of the Civil Service Law.

If you do not accept the Informal Conference Holder's recommendation or elect the Grievance Procedure or respond within the five (5) work day allotted period, then a HEARING will be held in accordance with Section 75 of the Civil Service Law on a date to be determined, at the **OFFICE OF ADMINISTRATIVE TRIALS AND HEARINGS, 100 Church St., 12th Floor, New York, New York 10007.** You must appear at this hearing. You may be represented by an attorney or a representative of your choice. You may summon witnesses to testify on your behalf, present other proof and cross examine witnesses who testify against you. Your representative is required to file a notice of appearance with OATH.

The administrative law judge may recommend dismissal of the charges, or if a finding of guilt is made, the following penalties may be recommended: a reprimand; a fine not to exceed one hundred dollars ($100); a suspension without pay not to exceed two (2) months; demotion to a lower civil service title and grade; or dismissal from service.

_~~Two~~ 100 newarle        8/10/23_

If you do not accept the Informal Conference Holder's recommendation and elect to follow the Grievance Procedure within the five (5) work day allotted time period, you will waive the right to utilize the procedures available to you pursuant to Sections 75 and 76 of the Civil Service Law or any other administrative or judicial tribunal, except for the purpose of enforcing an arbitrator's award, and a <u>STEP II GRIEVANCE HEARING</u> will be held before a Hearing Officer designated by the Administrator/Commissioner of the Department of Social Services-Human Resources Administration-Department of Homeless Services, on a date to be determined. You must appear at this hearing. You may be represented by counsel of your own choice, or by a union representative. Please bring to the hearing all relevant documentation in support of your appeal.

All further notices or communications addressed to you in connection with these charges will be mailed to your latest home address on record with the Department of Social Services-Human Resources Administration-Department of Homeless Services, unless you request in writing that the same be sent to you at a different address.

Very truly yours,

Molly Wasow Park

Date served: _8 - 10 - 23_

By: _VENESSA FAILSON_

Received: _[signature]_

(Employee's Signature)

Commissioner
Department of Social Services-Human Resources
Administration-Department of Homeless Services
of the City of New York

Served via email or in person
and by Certified or
Registered Receipt
Requested and First-Class
Mail on:

By: Denise DePrima
Deputy Commissioner, Labor Relations

Form 300b(reverse)
Rev. 03/2023

c/o Office of Disciplinary Affairs
4 World Trade Center
150 Greenwich Street, 31st Floor
New York, NY 10007
(212) 331-3080

ODA Tracking No. 1412014-02

# EXHIBIT A

**RE:** Goonewardena, Prasanna
**EIN:** 1412014
**TITLE:** Fraud Investigator I
**LOCATION:** M I C/1 Metrotech, Brooklyn, New York, NY 11201
**ADDRESS OF RECORD:** 247-34A 77 Crescent, Bellerose, NY 11426

## SPECIFICATION I:

From on or about May 16, 2023, until on or about July 13, 2023, you repeatedly violated the chain of command, and you made unprofessional, disparaging, unfounded, and inappropriate statements to ODA Executive Director Dinorah Nunez-White over a series of phone calls, described below. You also misused agency time by relentlessly calling Ms. Nunez-White's mobile work phone, and your calls were disruptive to ODA operations, contained inappropriate remarks, and were personally harassing to Ms. Nunez-White. Your overwhelming and harassing phone calls to Ms. Nunez-White were unreasonable and caused alarm.

- On or about May 16, 2023, at approximately 4:00 PM, you called Ms. Nunez-White and demanded that discovery be sent to you, to which Ms. Nunez-White responded that you had not signed a waiver of representation by your union and that you should contact your union. You then inappropriately requested personal information about your assigned Informal Conference Hearing Officer Petal Harlow.

- On or about May 17, 2023, you called Ms. Nunez-White and inappropriately made allegations about Hearing Officer Petal Harlow. You then requested discovery in advance of your Step 1 Hearing/Informal Conference[1], and Ms. Nunez-White informed you that since you had not signed a waiver of representation by your union, that they would be your representation and that you should contact your union. Ms. Nunez-White instructed you that you would have the opportunity to present your evidence at the Step 1 Hearing/Informal Conference, but that until then you should refrain from contacting her further.

- On or about May 18, 2023, despite being asked by Ms. Nunez-White not to continue to contact her, you called Ms. Nunez-White's office but were told that Ms. Nunez-White was not at her desk at which point you falsely accused Ms. Nunez-White of instructing staff to tell you that Ms. Nunez-White was not there.

- On or about July 13, 2023, you emailed your "Election of a Section 75 hearing" form to the Office of Disciplinary Affairs. You inappropriately violated the chain of command by including DSS Commissioner Molly Wasow Park on the email. In the email, you disrespectfully called ODA Hearing Officer Cindy Rivera *"unqualified."* You then forwarded this email directly to ODA Executive Director Dinorah Nunez-White, to which

---

[1] These disciplinary charges are identified as ODA Tracking No. 1412014-01.

ODA Tracking No. 1412014-02

she responded "Received." In response to her email, you wrote in an intimidating manner, *"See you at OATH and a federal court deposition. Good luck."*

**Your behavior and actions violated the DSS-HRA-DHS rules contained below in numerals I-XI.**

## SPECIFICATION II:

From on or about May 16, 2023, until on or about May 17, 2023, you repeatedly sent Senior Hearing Officer Petal Harlow a series of emails containing unprofessional, harassing language, and unfounded allegations of conspiracy against you. Additionally, you contacted Ms. Nunez-White and attempted to gather personal information regarding Ms. Harlow (See Specification I, bullet point 1, above). Your emails and phone calls were unprofessional and made Ms. Harlow feel highly uncomfortable, causing her to be recused from conducting your Step I/ Informal Conference, described in detail, below.

- On or about May 16, 2023, at approximately 4:16 PM, you sent an email to Ms. Harlow where you seemed to imply that you knew Ms. Harlow was at work but that she was purposefully avoiding your phone calls by writing, *"You Ms. Harlow is on the computer. I just called your phone, and you did not pick up."*

- In addition, described in Specification I, above, on or about May 16, 2023, at approximately 4:00 PM, you called ODA Executive Director Dinorah Nunez-White and inappropriately requested personal information about your assigned Hearing Officer Petal Harlow.

- On or about May 17, 2023, at approximately 2:36 PM you sent an email to Ms. Harlow alleging that Ms. Harlow engaged in a conspiracy with OLA General Counsel Ann Marie Scalia and *"another outside lawyer"* to terminate you. You then recklessly accused Ms. Harlow of defamation against you. At the end of the email, you wrote, *"Be safe"* which caused Ms. Harlow to be concerned about your overall behavior towards her.

- In addition, described in Specification II, above, on or about May 17, 2023, you called ODA Executive Director, Ms. Nunez-White and made baseless allegations that Ms. Harlow was biased against you and was attempting to ruin your reputation and terminate you.

**Your behavior and actions violated the DSS-HRA-DHS rules contained below in numerals I-XI.**

## SPECIFICATION III:

From on or about May 16, 2023, to on or about June 29, 2023, you repeatedly violated the chain of command, were insubordinate, and you made unprofessional, threatening, disparaging, and inappropriate statements to supervisory/management staff in your written correspondences, which also included implications of racial discrimination. You also consistently misused agency

ODA Tracking No. 1412014-02

time, by constantly sending non-work-related emails concerning a lawsuit you brought against the Agency to the supervisory/management staff, which caused an unwarranted logistical hardship for the supervisory/management staff, as a significant amount of time was expended on responding to you.

- On or about May 16, 2023, at approximately 4:36 PM you violated the chain of command by forwarding an email containing scheduling details for your Step 1/ Informal Conference with the Office of Disciplinary Affairs to DSS General Counsel Ann Marie Scalia.

- On or about May 24, 2023, at approximately 12:21 PM you violated the chain of command by emailing April Hill and included DSS Commissioner Molly Park alleging procedural deficiencies in your service of disciplinary charges.

- On or about May 24, 2023, at approximately 3:08 PM you emailed Commissioner Molly Park requesting that she independently dismiss the disciplinary charges filed against you. In the same email you disrespectfully and derogatorily implied that Mark Neal assisted an employee Glenn Parker due to them both being African American.

- On or about June 2, 2023, at approximately 2:40 PM, you emailed Commissioner Molly Park alleging that ODA Executive Director Dinorah Nunez-White falsified charges against you and lied to you on the phone. You also made a disparaging and disrespectful comment saying, *"Ms. Nunez-White is not a hotshot lawyer. It took her three times to pass the bar exam. I have never heard that some one taking three years to pass the bar exam. How many times did she fail?"* Later in the email you made disparaging and disrespectful comments about two separate employees who you identify as African American.

- On or about June 12, 2023, at approximately 2:05 PM you sent an email to Ms. Nunez-White, Mark Neal, Ms. Scalia, and Commissioner Molly Park containing discourteous language alleging that you have proof that Ms. Nunez-White helped an African American employee and implying she did so due to her also being African American, without any relationship or tether to your disciplinary case or lawsuit.

- On or about June 13, 2023, at approximately 8:37 AM you sent an email to Ms. Nunez-White, Mark Neal, Ms. Scalia, Stephen Dickerson, and Commissioner Park regarding a civil lawsuit you filed against Ms. DePrima. You allege the individuals included in the email of *"conspiring to terminate my employment,"* when the Step 1/Informal Conference for your disciplinary charges had not even been held.

- On or about June 29, 2023, at approximately 1:10 PM you sent an email to Ms. Scalia and Paul Ligresti accusing Ms. Scalia of unlawfully reading your email communications with other Agency staff. On or about June 29, 2023, at approximately 1:24 PM you sent a follow up email to Ms. Scalia and Mr. Ligresti alleging that reading your Agency emails, *"is a criminal conduct."*

ODA Tracking No. 1412014-02

**Your behavior and actions violated the DSS-HRA-DHS rules contained below in numerals I-XI.**

## SPECIFICATION IV:

On or about June 22, 2023, at approximately 9:15 AM, you arrived at the 31st floor of 4 World Trade Center, located at 150 Greenwich St., New York, NY 10007 for an Informal Conference before ODA Hearing Officer Cindy Rivera. While sitting in the waiting area, you began to make inappropriate and offensive inquiries to the 31st floor receptionist Sherkia Boone about Office of Conflict Resolution Director Stephen Dickerson's race (which has nothing to do with your disciplinary charges) and whether he worked on that floor.

Shortly after, you stopped Office of Conflict Resolution staff member Tyra Branch on her way to her work area and asked her if her name was Petal. When she responded *"no"* you proceeded to point to your hand with your finger while rubbing your hand and obnoxiously said, *"Are you sure, because you look alike."* Your hand gesture was inappropriate and offensive because it implied that Ms. Branch and Ms. Petal looked alike due to their skin color.

**Your behavior and actions violated the DSS-HRA-DHS rules contained below in numerals I-XI.**

**Your behavior and actions, described above, violated the following DSS-HRA-DHS rules:**

I.    You violated DSS-HRA-DHS Code of Conduct, Executive Order No. 748, Section II-A (2), *Standards of Conduct*, which states in relevant part, "Employees shall be courteous and considerate in their contact with the public and with other employees at all times. Employees are expected to conduct themselves in a manner which will reflect favorably upon them, the Agency, and the City. Employees are not to conduct themselves in a manner prejudicial to good order and discipline."

II.    You violated DSS-HRA-DHS Code of Conduct, Executive Order No. 748, Section II-A (7) *Standards of Conduct*, "Offenses committed off Agency premises may result in disciplinary action if they reflect unfavorably on the fitness of the employee or if they bring or may bring discredit to the Agency."

III.    You violated DSS-HRA-DHS Code of Conduct, Executive Order No. 748, Section II-D (1), *Standards of Conduct*, which states in relevant part, "Employees shall be courteous and considerate in their contact with fellow employees at all times. All personnel should work to maintain an atmosphere of appreciation of the diversity reflected in our staff and to promote understanding among our co-workers."

IV.    You violated DSS-HRA-DHS Code of Conduct, Executive Order No. 748, Section III-B (1), *Performance of Duties*, which states in relevant part, "Employees shall obey all regulations and orders of their supervisors. All orders issued, oral or written, by supervisory personnel must be obeyed immediately, despite advice offered by labor

Page 4 of 6

representatives. If the employee believes a particular directive is inconsistent with the terms of the existing labor contract or existing law, they must nevertheless obey the order and then file a grievance through the proper channels. Each employee shall consult with their direct supervisor if they believe they have a problem or grievance before consulting their supervisor's superior."

**V.**   You violated DSS-HRA-DHS Code of Conduct, Executive Order No. 748, Section III-B (2), *Performance of Duties*, which states in relevant part, "Each employee shall perform all duties which are imposed by law or by the employee's tasks and standards. Employees are expected to carry out all work assignments given to them by their supervisor as accurately and efficiently as possible. If, for any reason, an employee is unable to carry out an assignment within the prescribed time period, they shall promptly notify their immediate supervisor, giving specific reasons for their inability to do so."

**VI.**   You violated DSS-HRA-DHS Code of Conduct, Executive Order No. 748, Section III-B (3), *Performance of Duties*, which states in relevant part, "Employees shall not engage in any conduct detrimental to the Agency or which would undermine the effectiveness of the employee in the performance of their duties."

**VII.**   You violated DSS-HRA-DHS Code of Conduct, Executive Order No. 748, Section VIII-A, *Non-Discriminatory Practices and Respectful Workplace*, "Employees are expected to maintain a respectful and bully-free workplace. This includes refraining from any actions and behaviors that can be considered: workplace bullying, abusive conduct, creating an abusive work environment, and/or inappropriate disrespectful workplace behavior. Employees are expected to familiarize themselves with the Maintaining a Respectful and Bully-Free Workplace Informational so they will be aware of acceptable and unacceptable behaviors in the workplace and will know how to receive assistance if they are experiencing workplace bullying or are being treated with disrespect as indicated in the Informational.

   *1)*   Employees shall not use obscene, abusive, or inappropriate language with a client, supervisor, fellow employee, or private citizen.

   *2)*   Employees shall not use offensive, obscene or sexual language or gestures or ethnic slurs toward any participant, employee, or private citizen."

**VIII.**   You violated DSS-HRA-DHS Code of Conduct, Executive Order No. 748, Section VIII-B (1) & (3), *Non-Discriminatory Practices and Respectful Workplace*:
   • "Employees are expected to refrain from discriminating against and from performing any act, whether by speech, writing or dissemination of printed or recorded material or by any other means, which may tend to arouse hatred or ill will against any individual or group on the basis of their: age; alienage/citizenship; arrest/conviction record caregiver status; color; consumer credit history; disability; familial status; gender/including gender identity/pregnancy; genetic predisposition; marital status; military status; national origin; partnership status; pay history race; religion/creed; retaliation for filing a complaint or assisting in the investigation of an EEO

complaint; sexual orientation; sexual harassment; sexual and reproductive health decisions; unemployment status; victim of domestic violence' sex offenses, or stalking; and. This basic policy shall be applied in all dealings with persons seeking or receiving the services of the Agency, and in the recruitment, assignment, and promotion of staff and in other aspects of employment. (See also HRA Informational Nos. 05-17 (DSS-HRADHS Reasonable Accommodation Policy and 02-17 (DSS-HRA-DHS Sexual Harassment Policy), Procedure No. 17-11 (Revised EEO Complaint and Investigation Procedures), 1-02-09 DSS-HRA-DHS EEO Policy Revised and the NYC EEO Policy."

- "In an instance of discrimination or retaliation against an employee, applicant for employment, or participant, the person engaging in the discriminatory practice is subject to disciplinary action by the Agency as well as to the sanctions and penalties imposed by the courts and regulatory agencies such as the United States Equal Employment Opportunity Commission, the New York City Commission on Human Rights and the New York State Division of Human Rights."

**IX.**   You violated DSS-HRA-DHS Code of Conduct, Executive Order No. 748, Section IX (2), *Maintaining a Non-Violent Workplace*, "Employees shall not threaten or intimidate a client, supervisor, fellow employee, or private citizen."

**X.**   You violated DSS-HRA-DHS Code of Conduct, Executive Order No. 748, Section X-A (1), *Use of Agency Equipment, Facilities, Property, and Supplies*: "Employees shall not engage in any non-Agency activity during working hours, nor use any Agency premises to conduct non-Agency matters."

ODA Case Tracking No. 1412014-02

## Service of Charges

**Subdivision 6.4.2 of the Rules and Regulations of the City Personnel Director requires that if an employee is a resident of the City, then a copy of the charges and specifications shall be served in person upon the employee. This means that personal service must be attempted at the employee's residence if she/he cannot be served at his/her work location. The rule provides that when personal service has been attempted but cannot be made, or if the employee is not a resident of the City, the charges and specifications shall be served by regular mail (first class) at the last known address of the employee.**

## AFFIDAVIT OF PERSONAL SERVICE

STATE OF NEW YORK     :
                    : SS. :

COUNTY OF NEW YORK    :

_VENESSA FAISON_ , being duly sworn, deposes and says:
(Name of Server)

1. That I am employed by the _NYC Human Resources Administration_ at
_250 Livingston St, 5th Fl., Bklyn, N.Y. 11201_ .

2. That on _August 10, 2023_ , I personally served a true copy of the
(Date of Service)

PRASANNA GOONEWARDENA, a copy of which is annexed hereto, **PRASANNA**

**GOONEWARDENA,** by delivering to and leaving same with such person at

_250 Livingston St., 4th Fl_ .
(Location of service)

3. That at this time of such service, I knew the person served to be **PRASANNA GOONEWARDENA**

Sworn to before me

This _10_ day of _Aug_ 20 _23_ .

_____
Notary Public or
Commissioner of Deeds

_Venessa Faison_
(Signature of Server)

SHAKIRA OLIVER
Notary Public - State of New York
No. 01OL6417797
Qualified in Queens County
My Commission Expires 05/25/2025

EXHIBIT D

THE CITY OF NEW YORK
DEPARTMENT OF SOCIAL SERVICES-HUMAN
RESOURCES ADMINISTRATION-DEPARTMENT OF
HOMELESS SERVICES                                              X

In the Matter of Disciplinary Charges
and Specifications Relating to:

Name:        PRASANNA GOONEWARDENA          **CHARGES AND SPECIFICATIONS**
                                             **NOTICE OF INFORMAL CONFERENCE**
Title:       FRAUD INVESTIGATOR (31113-01)   **NOTICE OF SECTION 75 HEARING**
                                             **NOTICE OF STEP II GRIEVANCE HEARING**

Location:    250 LIVINGSTON STREET, 4TH FL.
             BROOKLYN, NEW YORK  11201       ODA No. 1412014-03

Address:     247-34 A 77 Crescent
             Bellerose, New York 11426

Respondent.                                                    X

Mr. GOONEWARDENA:

In accordance with Section 75 of the Civil Service Law, you are hereby notified that the charges and specifications relating to Misconduct and/or Incompetence detailed in Exhibit "A" attached hereto and made a part hereof, are preferred against you.

You are allowed eight (8) days from receipt of this notice to serve upon the undersigned a WRITTEN ANSWER to the charges set forth in Exhibit "A". **The filing of an answer is optional.**

In order to resolve these charges, an INFORMAL CONFERENCE will be held before Cindy Rivera, an Informal Conference Holder, **on the 19th day of December 2023, at 11:00 AM, at 4 World Trade Center/150 Greenwich Street – 31st Floor, (Reception Desk) New York, New York 10007,** at which you may appear and be represented by counsel of your own choice and/or by a union representative. **You should immediately contact your union or attorney about this matter.**

The Informal Conference Holder shall issue a written recommendation following the conference. The Informal Conference Holder may dismiss or sustain the charges and recommend an appropriate penalty which may consist of a reprimand, a fine or suspension, a demotion, or dismissal.

If the charges are sustained, you are allowed five (5) workdays from receipt of the Informal Conference Holder's recommendation to choose whether to accept the penalty, refuse the penalty and proceed with a Section 75 hearing, or elect the Grievance Procedure if you are in a title covered by a union contract with the City of New York.

If you accept the Informal Conference Holder's recommendation, you will be required to sign a waiver of your right to the procedures available to you under Section 75 and 76 of the Civil Service Law.

If you do not accept the Informal Conference Holder's recommendation or elect the Grievance Procedure or respond within the five (5) workday allotted period, then a HEARING will be held in accordance with Section 75 of the Civil Service Law on a date to be determined, at the **OFFICE OF ADMINISTRATIVE TRIALS AND HEARINGS, 100 Church St., 12th Floor, New York, New York 10007.** You must appear at this hearing. You may be represented by an attorney or a representative of your choice. You may summon witnesses to testify on your behalf, present other proof and cross examine witnesses who testify against you. Your representative is required to file a notice of appearance with OATH.

The administrative law judge may recommend dismissal of the charges, or if a finding of guilt is made, the following penalties may be recommended: a reprimand; a fine not to exceed one hundred dollars ($100); a suspension without pay not to exceed two (2) months; demotion to a lower civil service title and grade; or dismissal from service.

If you do not accept the Informal Conference Holder's recommendation and elect to follow the Grievance Procedure within the five (5) work day allotted time period, you will waive the right to utilize the procedures available to you pursuant to Sections 75 and 76 of the Civil Service Law or any other administrative or judicial tribunal, except for the purpose of enforcing an arbitrator's award, and a <u>STEP II GRIEVANCE HEARING</u> will be held before a Hearing Officer designated by the Administrator/Commissioner of the Department of Social Services-Human Resources Administration-Department of Homeless Services, on a date to be determined. You must appear at this hearing. You may be represented by counsel of your own choice, or by a union representative. Please bring to the hearing all relevant documentation in support of your appeal.

All further notices or communications addressed to you in connection with these charges will be mailed to your latest home address on record with the Department of Social Services-Human Resources Administration-Department of Homeless Services, unless you request in writing that the same be sent to you at a different address.

Date served: _December 06, 2023_
By: _Robyns Prattle_

Received: _Lil Yoonork_
    (Employee's Signature)

Served via email or in person
and by Certified or
Registered Receipt
Requested and First-Class
Mail on:

_____

Form 300b(reverse)
Rev. 03/2023

Very truly yours,
Molly Wasow Park


Commissioner
Department of Social Services-Human Resources
Administration-Department of Homeless Services
of the City of New York

By: Denise DePrima
Deputy Commissioner, Labor Relations




c/o Office of Disciplinary Affairs
4 World Trade Center
150 Greenwich Street, 31st Floor
New York, NY 10007
(212) 331-3080

ODA Case Tracking No. 1412014-03

## Service of Charges

**Subdivision 6.4.2 of the Rules and Regulations of the City Personnel Director requires that if an employee is a resident of the City, then a copy of the charges and specifications shall be served in person upon the employee. This means that personal service must be attempted at the employee's residence if she/he cannot be served at his/her work location. The rule provides that when personal service has been attempted but cannot be made, or if the employee is not a resident of the City, the charges and specifications shall be served by regular mail (first class) at the last known address of the employee.**

## AFFIDAVIT OF PERSONAL SERVICE

STATE OF NEW YORK     :

                      : SS. :

COUNTY OF NEW YORK    :

_Robyn Battle_____ , being duly sworn, deposes and says:
               (Name of Server)

1.    That I am employed by the _City of New York_____ at

_375 Pearl Street, New York, N.Y. 10038_____ .

2.    That on _December 06, 2023_____ , I personally served a true copy of the
                      (Date of Service)

Service of Charges, a copy of which is annexed hereto, **PRASANNA GOONEWARDENA,**

by delivering to and leaving same with such person at

_375 Pearl Street, New York, NY 10038._____
              (Location of service)

3.    That at this time of such service, I knew the person served to be **PRASANNA GOONEWARDENA**

Sworn to before me

This _____ day of _____ 20 _____ .


_____
        Notary Public or
      Commissioner of Deeds

_____
          (Signature of Server)

ODA Tracking No. 1412014-03

# EXHIBIT A

**RE:** Goonewardena, Prasanna
**EIN:** 1412014
**TITLE:** Fraud Investigator I
**LOCATION:** M I C/1 Metrotech, Brooklyn, New York, NY 11201
**ADDRESS OF RECORD:** 247-34A 77 Crescent, Bellerose, NY 11426

## SPECIFICATION I:

From on or about July 7, 2023, until on or about August 21, 2023, you repeatedly violated the chain of command by sending emails containing offensive and/or inappropriate comments to managerial agency staff who are not directly involved in your disciplinary cases, including DSS Commissioner Molly Park, Office of Legal Affairs (OLA) General Counsel Ann Marie Scalia, and Human Resource Solutions (HRS) Deputy Commissioner Mark Neal. You sent these communications despite having been previously told repeatedly on or about June 23, 2023, and on or about July 31, 2023, to only communicate with Agency Attorney Emily Tone Hill and/or OLA Employment Law Division Deputy General Counsel Paul Ligresti, concerning your pending disciplinary matters.

In addition, your numerous emails contained baseless accusations and racially-motivated sentiments that were <u>unrelated</u> to the merit or substance of your discipline cases, and which were disruptive, offensive and caused alarm, described below.

   A.  On or about August 21, 2023 at 9:43 am, you wrote an email (Subject: "FW: Requesting a reply to my 8/15/2023 letter of discovery") to DSS Commissioner Molly Park, making offensive statements including:

      o  *"Are Ms. Scalia, Nunez-White & Denise DePrima beyond stupid?"*
      o  *"I not only need you to stop this and get rid of incompetent criminals- Scalia, Nunez-White, Emily Tone-Hill, Denise DePrima, Cindy Rivera, Albert Gamarra and Latimer-Jackson. DSS became a joke now. It became a criminal enterprise run by stupid incompetent people with law license who have no legal knowledge. Just embarrassing."*

   B.  On or about August 21, 2023 at 3:23 pm, you wrote an email to DSS Commissioner Ms. Park (Subject: "FW: Prasanna Goonewardena – ODA No. 1412014-Informal Conference Reschedule Notice & Final Discovery"), making inappropriate statements including:

      o  *"I am grateful that Gary Jenkins – unqualified guy who was an embarrassment from the beginning to any agency is gone as I predicted. I expect the next to go is Scalia & Nunez-White."*
      o  *"Also, Eric Adams will be indicted by the FEDS for corruption in his second term second year."*

ODA Tracking No. 1412014-03

C.  On or about August 22, 2023 at 11:39 am, you wrote an email (Subject: "Recap of unlawful acts with my opinion") to Ann Marie Scalia, cc'ing Commissioner Molly Park, inappropriately making offensive and derogatory statements including:

- o  *"In March of 2023, I communicated by email with Nunez-White regarding whether the write-up was in personal folder. Nunez-White acted dumb as though she did not know me. She enlisted Daniel Paul Korenstein as Nunez-White do not poses any legal knowledge."*
- o  *"Mr. Dickerson with prejudiced mind got his secretary and Ms. Boone (call forwarded) to lie making up outrageous excuse that Mr. Dickerson was on Ms. Boone's phone while she was talking with me."*
- o  *"Mr. Dickerson is Black and did not want to execute his duties as taxpayers expects."*
- o  *"Since Nunez-White has no legal knowledge, she contacted Ms. Scalia."*
- o  *"But Ms. Latimer-Jackson (unstable) needed a muscle man to harass and intimidate me. When the bodybuilder started stalking and harassing me, that created a criminal conduct (third degree harassment and conspiracy) by Cindy Rivera, Latimer- Jackson and the bodybuilder."*
- o  *"The hearing was a clown show: I had two unqualified, aggressive not too smart people (my opinion) just kept talking and talking making threats misbehaving and making comments that are legally and logically not possible."*

D.  On or about July 31, 2023, at 11:10 am, you wrote an email to the OLA Employment Law Division(Subject: "Stipulation"), making offensive and derogatory statements concerning HRS Deputy Commissioner Mark Neal, including:

- o  *"Are you aware that Mark Neal defending a black guy who really committed a misconduct, just because they are both black?"*

E.  On or about July 20, 2023 at 11:35 am, you sent an email to OLA staff (Subject: "Name of secretary"), making inappropriate statements and baseless allegations concerning Office of Conflict Resolution Director, Stephen Dickerson, including:

- o  *"Who hired Dickerson? Why is he still there misbehaving? Here is another thing: Mr. Dickerson is using his city time to see his private clients as a social worker. How is this allowed to happen, where taxpayers are paying for his personal gain?"*

F.  On or about July 31, 2023 at 9:19 am, you wrote an email (Subject: "Stipulation"), including Ms. Scalia, and other OLA and ODA staff, making offensive statements including:

- o  *"Upon information and belief, Mr. Korenstein is a very decent person. He is not in the same class as Nunez-White. As such, he should cut ties with Nunez-White who has no legal knowledge."*
- o  *"I advise everyone to cut ties with people like Nunez-White, Latimer-Jackson..."*
- o  *"Ms. Scalia, You are on the phone at the time I am sending this message."*

ODA Tracking No. 1412014-03

- o  *"I am also, requesting you to report Ms. Latimer-Jackson to the NYPD for having the muscle guy to annoy, harass & intimidate me on 6/22/23 making an outrageous allegation that I [approached] and threatened Sherkia Boone, that never happened. These individuals' employment must be terminated."*

G.  On or about July 7, 2023 at 1:12 pm, you wrote an email to Mr. Paul Ligresti, making inappropriate and derogatory statements, including:

- o  *"I am also going to send them [OATH] and you some decisions NY State Commissioner on Judicial conduct where black Judges were removed/censored, so, they know where I stand on how judges should conduct themselves."*

**Your behavior and actions violated the DSS-HRA-DHS rules contained below in numerals I-IX.**

## SPECIFICATION II:

On or about August 10, 2023, IREA Director of the Health Exchange Division, Venessa Faison, and Administrative Investigator I, Robin Annunziata, went to your office desk to serve you with a notice of disciplinary charges.[1] Ms. Faison introduced herself and Ms. Annunziata by name, title, division and asked you if they could speak with you in the conference room. Once in the conference room, Ms. Faison informed you that they were there to formally serve you with disciplinary charges in the absence of Division Director Robyn Battle. You then became noticeably irate and asked them to identify themselves again and began to question how they came into possession with the documents. As they repeated their titles and purpose in serving you, you then began making accusations against Ms. Faison, asking her why the documents were in an envelope other than the interoffice envelope and inappropriately accusing her of reading the documents which contained your business. Ms. Faison assured you she had not read the documents. For the next 15 minutes, you continued to repetitively ask how they came into possession of the documents, the interoffice envelope and their identity.

Following this, on or about August 24, 2023, you emailed Ms. Faison, inappropriately stating that she does not have your consent to share this communication with your Director, Robyn Battle. You also told Ms. Faison that since she is not a process server that, *"Even assuming arguendo you are a director, it did not give you the right to approach me to serve legal documents. (Please see your job description.). I respectfully ask you never to approach me again."*

In addition, you falsely accused Ms. Annunziata of being aggressive and you described the interaction as an "altercation," stating, *"You should not be filing any false accusations, as I have done nothing wrong. ... You and your coworker will be a witness to altercations that you two initiated unlawfully stating that you were following orders from the legal department. (You two had no business of approaching me with a disciplinary notice.)."*

In an additional email, sent to Commissioner Park, OLA and ODA staff, on or about August 22, 2023, entitled, "Recap of unlawful acts with my opinion," you made inflammatory statements about Ms. Faison and Ms. Annunziata (described as "Jane Doe"), *"I became feared for my safety*

---

[1] Related to disciplinary case identified by ODA Tracking No. 1412014-02.

*as the two were unstable individuals that approached to carryout the orders that were given to them at any cost by the author of the email.*"

In addition, in an email sent on or about September 26, 2023, at 8:57 am, you again described Ms. Faison and Ms. Annunziata as "*unstable & aggressive.*"

Your communications were intimidating and unprofessional.

**Your behavior and actions violated the DSS-HRA-DHS rules contained below in numerals I-V.**

**SPECIFICATION III:**
On or about September 22, 2023, you submitted a written response to the Office of Disciplinary Affairs, entitled, "Respondent's Defense Pursuant to Civil Service Law Section 75-b," concerning your disciplinary charges identified by ODA Tracking No. 1412014-02, in which you made numerous false, baseless and derogatory accusations about other staff such as ODA Executive Director Dinorah Nunez White, OLA General Counsel Ann Marie Scalia, HRS Deputy Commissioner Mark Neal, ODA Assistant Director Charise Latimer-Jackson, and ODA Hearing Officer Cindy Rivera, including:

- "*Nunez-White is a sociopath. First, she [tried] to enlist Daniel Paul Korenstein. Upon information and belief, Korenstein didn't want to take part in Nunez-White's unlawful acts.*"
- "*Then, she enlisted Mark Neal. Mark Neal is Black, so he agreed to get on board with her unlawful acts. They both have a common interest: dislike of Asians, a likeness for Black and Hispanics, and enjoy engaging in unlawful acts.*"
- "*Nunez-White and Scalia are street thugs who got around the system because of their race.*"
- "*It took Nunez-White three years to pass the bar exam.*"
- "*It appears that Nunez-White is using and demanding her supervisor Denise DePrima to commit the unlawful acts by inserting DePrima's name. This establishes conspiracy...*"
- "*DSS promotes unqualified Blacks and Hispanics like Latimer Jackson, Nunez-White and Cindy Rivera.*"
- "*Neither Nunez-White, Rivera, nor DePrima know the law, just got jobs because of their race.*"
- "*Moreover, at the first hearing on 6/22/23, both Ms. Latimer-Jackson and Ms. Rivera made numerous incoherent comments, exhibited childish behavior, and acted like street thugs.*"
- "*Goonewardena is assuming that she appears to be claiming violation of the chain of command for including General Counsel Scalia, and Mark Neal- the guy who only supports Blacks...*"
- "*Finally, Goonewardena asks Nunez-White, Scalia, & Rivera, 'Tell me something you can do better than me? I can do your job better than you, but you cannot perform better than me.' This is no longer a myth; it is a fact.*"

**Your behavior and actions violated the DSS-HRA-DHS rules contained below in numerals I-VII, and IX.**

ODA Tracking No. 1412014-03

**SPECIFICATION IV:**

From approximately September 2023 to approximately October 2023, you repeatedly emailed DSS Commissioner Park, General Counsel Ann Marie Scalia, FIA First Deputy Commissioner Jill Berry, during Agency work hours, as well as other ODA and OLA staff, making baseless and inappropriate allegations accusing ODA and OLA staff of committing "unlawful" and "criminal acts," described below.

- On or about October 27, 2023, at 10:45 am, you wrote an email with the subject, "ODA No: 1412014-2 is overdue," in which you stated, *"My communications with the Commissioner, Deputy Commissioner Jill Berry and the General counsel, Scalia who is your supervisor are appropriate and it is my right. As such, I will continue to inform them of the unlawful acts committed by Scalia & Nunez-White. ...Maybe Ms. Scalia should have thought about not committing the unlawful act (redacting my email) in the beginning."*
- On or about October 27, 2023, at 11:13 am, you wrote an email with the subject, "ODA No: 1412014-2," in which you stated, *"Ms. Scalia had been very careful throughout her career not leaving a paper trail (not sending emails, only by phone) of her unlawful acts until now."*
- On or about October 24, 2023, you wrote an email with the subject, "Request the outcome of the second frivolous charges today" in which you stated, *"This is criminal. Your office had already engaged in numerous criminal acts. This is not disputed. (Enlisting the lobby front desk supervisor to harass and intimidate me on 6/22/2023 while there were two FJC security persons were present and lying about sending the video footage of 6/22/23.)."*
- On or about September 26, 2023, at 1:14 pm, you wrote an email with the subject, "Without waiving section 75 rights, I am not attending today's conference (ODA No: 1412014-2 as I fear for my safety," in which you stated, *"Considering the criminal/unlawful acts you, Latimer-Jackson, Nunez-White and others committed against me in the past few months, I am sure you are going to proceed as you wish."*
- On or about September 26, 2023, at 8:57 am, you wrote an email, "Without waiving section 75 rights, I am not attending today's conference (ODA No: 1412014-2 as I fear for my safety," in which you stated, *"DSS is a criminal enterprise."*
- On or about August 22, 2023, you wrote an email accusing General Counsel Ann Marie Scalia of altering emails to use as evidence against you, stating that she was committing a criminal act and that her law license should be suspended.

**Your behavior and actions violated the DSS-HRA-DHS rules contained below in numerals I-VIII.**

**Your behavior and actions, described above, violated the following DSS-HRA-DHS rules:**

**I.**    You violated DSS-HRA-DHS Code of Conduct, Executive Order No. 748, Section II-A (2), *Standards of Conduct*, which states in relevant part, "Employees shall be courteous and considerate in their contact with the public and with other employees at all times.

Employees are expected to conduct themselves in a manner which will reflect favorably upon them, the Agency, and the City. Employees are not to conduct themselves in a manner prejudicial to good order and discipline."

**II.** You violated DSS-HRA-DHS Code of Conduct, Executive Order No. 748, Section II-D (1), *Standards of Conduct*, which states in relevant part, "Employees shall be courteous and considerate in their contact with fellow employees at all times. All personnel should work to maintain an atmosphere of appreciation of the diversity reflected in our staff and to promote understanding among our co-workers."

**III.** You violated DSS-HRA-DHS Code of Conduct, Executive Order No. 748, Section III-B (1), *Performance of Duties*, which states in relevant part, "Employees shall obey all regulations and orders of their supervisors. All orders issued, oral or written, by supervisory personnel must be obeyed immediately, despite advice offered by labor representatives. If the employee believes a particular directive is inconsistent with the terms of the existing labor contract or existing law, they must nevertheless obey the order and then file a grievance through the proper channels. Each employee shall consult with their direct supervisor if they believe they have a problem or grievance before consulting their supervisor's superior."

**IV.** You violated DSS-HRA-DHS Code of Conduct, Executive Order No. 748, Section III-B (3), *Performance of Duties*, which states in relevant part, "Employees shall not engage in any conduct detrimental to the Agency or which would undermine the effectiveness of the employee in the performance of their duties."

**V.** You violated DSS-HRA-DHS Code of Conduct, Executive Order No. 748, Section VIII-A, *Non-Discriminatory Practices and Respectful Workplace*, "Employees are expected to maintain a respectful and bully-free workplace. This includes refraining from any actions and behaviors that can be considered: workplace bullying, abusive conduct, creating an abusive work environment, and/or inappropriate disrespectful workplace behavior. Employees are expected to familiarize themselves with the Maintaining a Respectful and Bully-Free Workplace Informational so they will be aware of acceptable and unacceptable behaviors in the workplace and will know how to receive assistance if they are experiencing workplace bullying or are being treated with disrespect as indicated in the Informational.

    1) Employees shall not use obscene, abusive, or inappropriate language with a client, supervisor, fellow employee, or private citizen.

    2) Employees shall not use offensive, obscene or sexual language or gestures or ethnic slurs toward any participant, employee, or private citizen."

**VI.** You violated DSS-HRA-DHS Code of Conduct, Executive Order No. 748, Section VIII-B (1) & (3), *Non-Discriminatory Practices and Respectful Workplace*:
- "Employees are expected to refrain from discriminating against and from performing any act, whether by speech, writing or dissemination of printed or recorded material or

ODA Tracking No. 1412014-03

by any other means, which may tend to arouse hatred or ill will against any individual or group on the basis of their: age; alienage/citizenship; arrest/conviction record caregiver status; color; consumer credit history; disability; familial status; gender/including gender identity/pregnancy; genetic predisposition; marital status; military status; national origin; partnership status; pay history race; religion/creed; retaliation for filing a complaint or assisting in the investigation of an EEO complaint; sexual orientation; sexual harassment; sexual and reproductive health decisions; unemployment status; victim of domestic violence' sex offenses, or stalking; and. This basic policy shall be applied in all dealings with persons seeking or receiving the services of the Agency, and in the recruitment, assignment, and promotion of staff and in other aspects of employment. (See also HRA Informational Nos. 05-17 (DSS-HRADHS Reasonable Accommodation Policy and 02-17 (DSS-HRA-DHS Sexual Harassment Policy), Procedure No. 17-11 (Revised EEO Complaint and Investigation Procedures), I-02-09 DSS-HRA-DHS EEO Policy Revised and the NYC EEO Policy."

- "In an instance of discrimination or retaliation against an employee, applicant for employment, or participant, the person engaging in the discriminatory practice is subject to disciplinary action by the Agency as well as to the sanctions and penalties imposed by the courts and regulatory agencies such as the United States Equal Employment Opportunity Commission, the New York City Commission on Human Rights and the New York State Division of Human Rights."

**VII.**    You violated DSS-HRA-DHS Code of Conduct, Executive Order No. 748, Section IX (2), *Maintaining a Non-Violent Workplace*, "Employees shall not threaten or intimidate a client, supervisor, fellow employee, or private citizen."

**VIII.**   You violated DSS-HRA-DHS Code of Conduct, Executive Order No. 748, Section X-A (1), *Use of Agency Equipment, Facilities, Property, and Supplies*: "Employees shall not engage in any non-Agency activity during working hours, nor use any Agency premises to conduct non-Agency matters."

**IX.**    You violated the DSS-HRA-DHS Code of Conduct, Executive Order No. 748, Section V(A)(1), which states: "Employees in the course of their official duties or at a hearing, meeting, or proceeding shall not knowingly make a false statement."

EXhIbITE

THE CITY OF NEW YORK
DEPARTMENT OF SOCIAL SERVICES-HUMAN
RESOURCES ADMINISTRATION-DEPARTMENT OF
HOMELESS SERVICES                                                       X
In the Matter of Disciplinary Charges
and Specifications Relating to:

| | | |
|---|---|---|
| Name: | PRASANNA GOONEWARDENA | **CHARGES AND SPECIFICATIONS** |
| Title: | FRAUD INVESTIGATOR (31113-01) | **NOTICE OF INFORMAL CONFERENCE** |
| | | **NOTICE OF SECTION 75 HEARING** |
| | | **NOTICE OF STEP II GRIEVANCE HEARING** |
| Location: | 375 PEARL STREET, 22ND FL. | |
| | NEW YORK, NEW YORK 10038 | ODA No. 1412014-04 |
| Address: | 247-34 A 77 Crescent | |
| | Bellerose, New York 11426 | |

Respondent.                                                              X

Mr. GOONEWARDENA:

In accordance with Section 75 of the Civil Service Law, you are hereby notified that the charges and specifications relating to Misconduct and/or Incompetence detailed in Exhibit "A" attached hereto and made a part hereof, are preferred against you.

You are allowed eight (8) days from receipt of this notice to serve upon the undersigned a WRITTEN ANSWER to the charges set forth in Exhibit "A". **The filing of an answer is optional.**

In order to resolve these charges, an INFORMAL CONFERENCE will be held before **Cindy Rivera**, an Informal Conference Holder, **on the 7th day of February 2024, at 10:00 AM, at 4 World Trade Center/150 Greenwich Street – 31st Floor, (Reception Desk) New York, New York 10007**, at which you may appear and be represented by counsel of your own choice and/or by a union representative. **You should immediately contact your union or attorney about this matter.**

The Informal Conference Holder shall issue a written recommendation following the conference. The Informal Conference Holder may dismiss or sustain the charges and recommend an appropriate penalty which may consist of a reprimand, a fine or suspension, a demotion, or dismissal.

If the charges are sustained, you are allowed five (5) workdays from receipt of the Informal Conference Holder's recommendation to choose whether to accept the penalty, refuse the penalty and proceed with a Section 75 hearing, or elect the Grievance Procedure if you are in a title covered by a union contract with the City of New York.

If you accept the Informal Conference Holder's recommendation, you will be required to sign a waiver of your right to the procedures available to you under Section 75 and 76 of the Civil Service Law.

If you do not accept the Informal Conference Holder's recommendation or elect the Grievance Procedure or respond within the five (5) work day allotted period, then a HEARING will be held in accordance with Section 75 of the Civil Service Law on a date to be determined, at the **OFFICE OF ADMINISTRATIVE TRIALS AND HEARINGS, 100 Church St., 12th Floor, New York, New York 10007.** You must appear at this hearing. You may be represented by an attorney or a representative of your choice. You may summon witnesses to testify on your behalf, present other proof and cross examine witnesses who testify against you. Your representative is required to file a notice of appearance with OATH.

The administrative law judge may recommend dismissal of the charges, or if a finding of guilt is made, the following penalties may be recommended: a reprimand; a fine not to exceed one hundred dollars ($100); a suspension without pay not to exceed two (2) months; demotion to a lower civil service title and grade; or dismissal from service.

If you do not accept the Informal Conference Holder's recommendation and elect to follow the Grievance Procedure within the five (5) work day allotted time period, you will waive the right to utilize the procedures available to you pursuant to Sections 75 and 76 of the Civil Service Law or any other administrative or judicial tribunal, except for the purpose of enforcing an arbitrator's award, and a STEP II GRIEVANCE HEARING will be held before a Hearing Officer designated by the Administrator/Commissioner of the Department of Social Services-Human Resources Administration-Department of Homeless Services, on a date to be determined. You must appear at this hearing. You may be represented by counsel of your own choice, or by a union representative. Please bring to the hearing all relevant documentation in support of your appeal.

All further notices or communications addressed to you in connection with these charges will be mailed to your latest home address on record with the Department of Social Services-Human Resources Administration-Department of Homeless Services, unless you request in writing that the same be sent to you at a different address.

Date served: 02/01/2024
By: _Robyn Fratello_

Received: _[signature]_
(Employee's Signature)

Served via email or in person
and by Certified or
Registered Receipt
Requested and First-Class
Mail on:

_____

Form 300b(reverse)
Rev. 03/2023

Very truly yours,
Molly Wasow Park

Commissioner
Department of Social Services-Human Resources
Administration-Department of Homeless Services
of the City of New York

By: Denise DePrima
Deputy Commissioner, Labor Relations

c/o Office of Disciplinary Affairs
4 World Trade Center
150 Greenwich Street, 31st Floor
New York, NY 10007
(212) 331-3080

ODA Tracking No. 1412014-04

# EXHIBIT A

**RE:** Goonewardena, Prasanna
**EIN:** 1412014
**TITLE:** Fraud Investigator I
**LOCATION:** M I C/1 Metrotech, Brooklyn, New York, NY 11201
**ADDRESS OF RECORD:** 247-34A 77 Crescent, Bellerose, NY 11426

## SPECIFICATION I:

On or about September 22, 2023, you submitted a written response to the Office of Disciplinary Affairs (ODA) responding to disciplinary charges filed against you. In this written statement, you made false and unfounded allegations, and highly inappropriate and derogatory statements about numerous Agency employees. The unprofessional, discourteous and derogatory statements are described below.

- Page 2 of 12: "*Because Ms. Nunez-White, **a dumb woman**, does not like being exposed her unlawful acts, it is not offensive nor a violation of any code of conduct...*"

- Page 4 of 12: "*Every time Goonewardena listens to the recording **the clown show** happens in real time, Goonewardena could not stop laughing at the clown show: the threats and how **unqualified Latimer-Jackson, Cindy Rivera**, and the Bodybuilder harassing Goonewardena.*"

- Page 4 of 12: "***Mark Neal is Black. His mission is to get black employees out of trouble.** Glenn Parker is Black. Ms. DePrema [sic] was investigating Mr. Parker's misconduct. Mr. Neal Met with Glenn Parker on the 32nd floor and agreed to help Mr. Parker.*"

- Page 5 of 12: "*Mr. Dickerson, with discriminatory intent **abandoning his job** as the conflict resolution officer, a social worker, refused to see Goonewardena. **He courted various secretaries (recorded) to lie abandoning his job**.*"

- Page 7 of 12: "*For Denise DePrima and Nunez-White to enlist **two unstable employees** that consistently lied, misbehaved causing fear for Goonewardena's safety, is a serious violation.*"

- Page 9 of 12: "***Nunez-White is a sociopath.** Just disgusting for Nunez-White to abuse her position by using it to harass, defame and engage in criminal conduct against Goonewardena.*"

## Your behavior and actions, described above, violated the following DSS-HRA-DHS rules:

**I.**    You violated DSS-HRA-DHS Code of Conduct, Executive Order No. 748, Section II-A (2), *Standards of Conduct*, which states in relevant part, "Employees shall be courteous and considerate in their contact with the public and with other employees at all times.

ODA Tracking No. 1412014-04

Employees are expected to conduct themselves in a manner which will reflect favorably upon them, the Agency, and the City. Employees are not to conduct themselves in a manner prejudicial to good order and discipline."

**II.**   You violated DSS-HRA-DHS Code of Conduct, Executive Order No. 748, Section II-D (1), *Standards of Conduct*, which states in relevant part, "Employees shall be courteous and considerate in their contact with fellow employees at all times. All personnel should work to maintain an atmosphere of appreciation of the diversity reflected in our staff and to promote understanding among our co-workers."

**III.**   You violated DSS-HRA-DHS Code of Conduct, Executive Order No. 748, Section III-B (3), *Performance of Duties*, which states in relevant part, "Employees shall not engage in any conduct detrimental to the Agency or which would undermine the effectiveness of the employee in the performance of their duties."

**IV.**   You violated DSS-HRA-DHS Code of Conduct, Executive Order No. 748, Section VIII-A, *Non-Discriminatory Practices and Respectful Workplace*, "Employees are expected to maintain a respectful and bully-free workplace. This includes refraining from any actions and behaviors that can be considered: workplace bullying, abusive conduct, creating an abusive work environment, and/or inappropriate disrespectful workplace behavior. Employees are expected to familiarize themselves with the Maintaining a Respectful and Bully-Free Workplace Informational so they will be aware of acceptable and unacceptable behaviors in the workplace and will know how to receive assistance if they are experiencing workplace bullying or are being treated with disrespect as indicated in the Informational.

   1) Employees shall not use obscene, abusive, or inappropriate language with a client, supervisor, fellow employee, or private citizen.

   2) Employees shall not use offensive, obscene or sexual language or gestures or ethnic slurs toward any participant, employee, or private citizen."

**V.**   You violated DSS-HRA-DHS Code of Conduct, Executive Order No. 748, Section VIII-B (1) & (3), *Non-Discriminatory Practices and Respectful Workplace*:
   • "Employees are expected to refrain from discriminating against and from performing any act, whether by speech, writing or dissemination of printed or recorded material or by any other means, which may tend to arouse hatred or ill will against any individual or group on the basis of their: age; alienage/citizenship; arrest/conviction record caregiver status; color; consumer credit history; disability; familial status; gender/including gender identity/pregnancy; genetic predisposition; marital status; military status; national origin; partnership status; pay history race; religion/creed; retaliation for filing a complaint or assisting in the investigation of an EEO complaint; sexual orientation; sexual harassment; sexual and reproductive health decisions; unemployment status; victim of domestic violence' sex offenses, or stalking; and. This basic policy shall be applied in all dealings with persons seeking or receiving the services of the Agency, and in the recruitment, assignment, and promotion of staff and

ODA Tracking No. 1412014-04

in other aspects of employment. (See also HRA Informational Nos. 05-17 (DSS-HRADHS Reasonable Accommodation Policy and 02-17 (DSS-HRA-DHS Sexual Harassment Policy), Procedure No. 17-11 (Revised EEO Complaint and Investigation Procedures), 1-02-09 DSS-HRA-DHS EEO Policy Revised and the NYC EEO Policy."

- "In an instance of discrimination or retaliation against an employee, applicant for employment, or participant, the person engaging in the discriminatory practice is subject to disciplinary action by the Agency as well as to the sanctions and penalties imposed by the courts and regulatory agencies such as the United States Equal Employment Opportunity Commission, the New York City Commission on Human Rights and the New York State Division of Human Rights."

**VI.**     You violated DSS-HRA-DHS Code of Conduct, Executive Order No. 748, Section IX (2), *Maintaining a Non-Violent Workplace*, "Employees shall not threaten or intimidate a client, supervisor, fellow employee, or private citizen."

**VII.**     You violated the DSS-HRA-DHS Code of Conduct, Executive Order No. 748, Section V(A)(1), which states: "Employees in the course of their official duties or at a hearing, meeting, or proceeding shall not knowingly make a false statement."

Exhibit

G

**Goonewardena, Prasanna**

| | |
|---|---|
| **From:** | Goonewardena, Prasanna |
| **Sent:** | Wednesday, June 5, 2024 12:49 PM |
| **To:** | Tone-Hill, Emily |
| **Cc:** | Naidu-Price, Shavani; Scalia, Ann Marie; Ligresti, Paul |
| **Subject:** | Jacueline Torres v. NYC Department of social Service |

| **Tracking:** | **Recipient** | **Read** |
|---|---|---|
| | Tone-Hill, Emily | |
| | Naidu-Price, Shavani | |
| | Scalia, Ann Marie | Read: 6/5/2024 1:32 PM |
| | Ligresti, Paul | |

Good afternoon,

This communication has nothing to do with the two pending cases before Hon Julia Davis. As such, do not seek for her intervention.

This is a valid allegation against a sitting manager at DSS- Miguel Rosario.

I am making this communication exercising the U.S. Constitution 1st Amendment rights. It is protected speech.

The case *Jacueline Torres v. NYC Department of Social Services* (Index No.: 260161/2019/ BX) was settled on 2/18/2020. This this the case I wanted to introduce at trial where 1st Deputy Commissioner Michael Laidlaw grouped Ms. Torres & Gary Jenkins made inappropriate comments to Ms. Torress. Gary Jenkins had been sexually harassing women for years. Upon information and belief, another manger sexually harass women is Miguel Rosario. He is still with DSS untouched. He is Dominican Descent. The DSS had ignored (supported) Mr. Laidlaw's, Rosario's & Gary Jenkin's criminal behavior for years. These two were promoted in ranks. Undisputed evidence.

I was single handedly targeted (selective enforcement) with false accusations (caught on audio recordings) and conspired by enlisting various employees because of my race. I will be using this evidence in my upcoming federal claim.

Thanks.

*Best,*

 -/s/-

*Prasanna  Goonewardena*

Prasanna Goonewardena| Program Integrity Investigator
Pronouns: He, his, Him
BUREAU OF FRAUD INVESTIGATION
375 Pearl Street, New York, NY 10038
T: 929-252-2190

Exhibit H

Exhibit

I

**Goonewardena, Prasanna**

| | |
|---|---|
| **From:** | Tone-Hill, Emily |
| **Sent:** | Friday, April 26, 2024 1:05 PM |
| **To:** | Davis, Julia (OATH); Goonewardena, Prasanna |
| **Cc:** | PRASAGOON2@GMAIL.COM; OATH Calunit; Arenas-Perozo, Wanda (OATH); Naidu-Price, Shavani; OATH Calunit |
| **Subject:** | RE: HRA v. Prasanna Goonewardena - Adjournment Request response 4/26/24 |

Petitioner does submit that good cause is established for the reasons that were cited: (1) that this case be a significant part of our seeking termination at trial (2) for judicial efficiency of not holding two back-to-back trials and (3) that the systems misuse is related to the charges currently pending at OATH. Further that this adjournment request is for a relatively brief amount of time , that it is the first and only adjournment request that has been made, it was made weeks in advance, and that there is no showing of actual prejudice to defendant.

Notwithstanding the above, Petitioner notes that reconsideration was denied and will continue to prepare for trial starting on May 14th.

**From:** Davis, Julia (OATH) <JDavis5@oath.nyc.gov>
**Sent:** Friday, April 26, 2024 12:55 PM
**To:** Tone-Hill, Emily <toneem@dss.nyc.gov>; Goonewardena, Prasanna <goonewardenapr@hra.nyc.gov>
**Cc:** PRASAGOON2@GMAIL.COM; OATH Calunit <OATHCalunit@oath.nyc.gov>; Arenas-Perozo, Wanda (OATH) <WArenas-Perozo@oath.nyc.gov>; Naidu-Price, Shavani <naidupricesha@dss.nyc.gov>; OATH Calunit <OATHCalunit@oath.nyc.gov>
**Subject:** RE: HRA v. Prasanna Goonewardena - Adjournment Request response 4/26/24

The application for reconsideration is denied. I note that petitioner does not argue that good cause has been established or cite the reasons I have given for the denial. Furthermore, the facts of each case are different so that what has occurred in one case does not necessarily apply in a different case.

Thank you.

Julia Davis
Administrative Law Judge
NYC Office of Administrative Trials and Hearings
100 Church Street, 12th Floor
New York, NY 10007
jdavis5@oath.nyc.gov



**From:** Tone-Hill, Emily <toneem@dss.nyc.gov>
**Sent:** Friday, April 26, 2024 12:21 PM

Exhibit J

```
1              ALJ DAVIS:  Okay.  So the -- is there a time period
2         where disciplinary charges have to be filed in relation to
3         the incident?  Okay.  Never mind -- never mind that question.
4              MS. HARLOW:  Okay.
5         Q:   Is it -- is -- you testified today with your -- when
6    your lawyer asked you the question --
7              ALJ DAVIS:  No, not -- not her lawyer, the agency
8         lawyer?
9              MR. GOONEWARDENA:  Well, --
10             ALJ DAVIS:  No, Mr. Goonewardena, Ms. Price, and
11        Ms. Tone-Hill represent HRA.  They do not represent Ms.
12        Harlow personally.
13             MR. GOONEWARDENA:  Okay.
14             ALJ DAVIS:  So it's not her lawyer, it's the agency
15        lawyer.
16             MR. GOONEWARDENA:  I understand, but they --
17             ALJ DAVIS:  No, no, no, no.  No buts Mr.
18        Goonewardena.
19             MR. GOONEWARDENA:  Okay.
20        Q:   You testified today that it was inappropriate me setting
21   a deadline in -- in exhibit --
22             ALJ DAVIS:  Okay.  In Exhibit --
23        Q:   Exhibit 16, I believe.
24             ALJ DAVIS:  -- 17.  17.
25             MR. GOONEWARDENA:  Is it 17?
```

Exhibit K

Pet. Exh. 14

**Hines, Andre**

| | |
|---|---|
| **From:** | Goonewardena, Prasanna |
| **Sent:** | Tuesday, January 03, 2023 4:09 PM |
| **To:** | Daly, Sonia; Singh, Andrei |
| **Cc:** | Feliu, Maria; Harvey, Charmaine; Gamarra, Albert |
| **Subject:** | RE: Requesting 01/11/23 off |

Good afternoon,

I am good to go on the 11th at 2:30 pm.

Mr. Gamarra and Ms. Harvey had been responding, in contact with Mr. Singh Maria Feliu and the office manager Ms. Vargas, today and all of last week.

Thank you for reaching out.

I am wait[ing] for a response from Mr. Singh. Moreover, you are not on my side of chain of command, as such, please let Mr. Singh respond accordingly as there are U.S. and NY State constitution violations.

Toothpaste is out of the tube. No one can put it back in the tube.

Have a great day.

Thanks.

---

**From:** Daly, Sonia <dalys@dss.nyc.gov>
**Sent:** Tuesday, January 3, 2023 4:01 PM
**To:** Singh, Andrei <singha@dss.nyc.gov>; Goonewardena, Prasanna <goonewardenapr@hra.nyc.gov>
**Cc:** Feliu, Maria <felium@dss.nyc.gov>; Harvey, Charmaine <harveyc@dss.nyc.gov>; Gamarra, Albert <gamarraa@dss.nyc.gov>
**Subject:** RE: Requesting 01/11/23 off

+Prasanna Goonewardena

Happy New Year, Prasanna,

I am covering for Mr. Gamarra until he returns to work tomorrow.

I understand that Ms. Harvey has requested to meet with you and suggested you arrange for union (local 371) representation. **Have you done so?**

If not, and you'd like support in doing so, please let me know and I will arrange same.

Thank you,

Sonia

1

Exhibit

L

**From:** Gamarra, Albert <gamarraa@dss.nyc.gov>
**Sent:** Wednesday, May 25, 2022 1:13 PM
**To:** Goonewardena, Prasanna <goonewardenapr@hra.nyc.gov>
**Cc:** Harvey, Charmaine <harveyc@dss.nyc.gov>; Singh, Andrei <singha@dss.nyc.gov>
**Subject:** FW: A suggestion

Good afternoon Prasanna,

We thank you for your recommendation and we are currently reviewing it.  We will provide an update when we have more information but as with any potential changes there is a review process which does take time.  Please follow up with Ms. Harvey if you have any further questions regarding your recommendation.

I do want to reinforce what I said during the group meetings with all integrity staff.  Please follow the chain of command as per our agency policy.  If you would like a matter to be escalated then you should do so through the chain of command.  You should not directly contact Executive Director of Operations Sonia Daly (who is not in your chain of command) or Deputy Commissioner Colette Samman.  Please let me know if you have any questions?

Best,

**Albert Gamarra** | *Executive Director, IDNYC Program Performance*
1 Metrotech Center, Suite 1801 – Brooklyn, NY 11201
T: 929-221-7605   C: 929-441-0879
gamarraa@dss.nyc.gov | **NYC.gov/dss**



*Together We Make a Difference for New Yorkers*

CONFIDENTIALITY NOTICE:
If you have received this electronic transmission in error, delete it without copying or forwarding it and notify the sender of the error.

**From:** Daly, Sonia <dalys@dss.nyc.gov>
**Sent:** Wednesday, May 25, 2022 12:08 PM
**To:** Goonewardena, Prasanna <goonewardenapr@hra.nyc.gov>; Samman, Colette <sammanc@dss.nyc.gov>
**Cc:** Gamarra, Albert <gamarraa@dss.nyc.gov>
**Subject:** RE: A suggestion

+Albert Gamarra, IDNYC Executive Director, Program Performance

Hello, Prasanna,

Thank you for escalating your suggestion to us. In future, kindly add Mr. Gamarra.

We will discuss offline and return a response to you.

Have a good day!

Sonia

2

Exhibit

M

Pet. Exh. 15

**From:** Smalls, Eric <smallse@dss.nyc.gov>
**Sent:** Friday, January 20, 2023 4:24 PM
**To:** Nunez-White, Dinorah <nunez-whited@dss.nyc.gov>
**Cc:** McBean, Athina <mcbeana@dss.nyc.gov>
**Subject:** Statement regarding Prasanna Goodewardena

Good afternoon Ms. Nunez-White,

Hope all is well.

On January 10, 2023, at approximately 3:00 p.m., I called Prasanna Goonewardena to gain more clarity regarding a potential EEO complaint that was filed by him. Mr. Goonewardena stated that he felt like he was discriminated against in the hiring process, because he feels that the only reason he was hired is because an African American woman turned down the job offer because the work location was too far from her home. However, Mr. Goonewardena confirmed that he was offered the position and accepted the position, and is where he is currently working at right now. When asked how he became privy to this information, Mr. Goonewardena stated "I just know, no one told me".

Furthermore, Mr. Goonewardena stated that he has brought up suggestions to upper management, about work policies. However, he stated that his direct supervisor, Charmaine Harvey, has stated to him to please follow the chain of command and report these suggestions to herself, since she is Goonewardena's direct supervisor, which he felt was violating his first amendment rights. *false never said that*

Mr. Goonewardena also stated that he feels he is being discriminated against because he thinks that Director Charmaine Harvey is working to "get rid of him." When asked if he heard this directly from Ms. Harvey or from anyone else regarding these alleged statements, he stated, "No, I just know ."

When asked if he had informed the union of the issues he was having with his supervisor, Ms. Harvey and upper management, he explained to me that he does not think his union has nothing to do with this. Mr. Goonewardena also stated that he feels that because he is of Sri Lankan descent, he is being discriminated against, and also asked if I was of African American descent, because he doesn't feel like he would be helped fairly by an African American employee. I did not disclose my descent to Mr. Goonewardena and reaffirmed him I am a neutral party in this situation, and I am trying to help him with his complaint. He also asked who my supervisor was, and when I brought up Dennis Whinfield's name, he stated "He sounds like a black man also. An Irish man helped me before and he was very nice."

Mr. Goonewardena was informed that with all due respect to his complaint, it does fall under the EEO protected categories. Mr. Goonewardena was also informed that EEO will review the complaint again, and forward the complaint to the proper office for review, which he was not too happy about.

Best,

**Eric Smalls** | *EEO Counselor/Investigator*

Office of Equal Employment Opportunity

**Prononuns: He, His, Him**
150 Greenwich Street -- 42nd Floor,

New York, New York, 10007

T:929-221-5144  Fax:1212-437-2162
*smallse@dss.nyc.gov*

Exhibit N



**Hines, Andre**

| | |
|---|---|
| **From:** | Nunez-White, Dinorah |
| **Sent:** | Wednesday, February 15, 2023 9:38 PM |
| **To:** | Hines, Andre |
| **Cc:** | Hill, Lauren |
| **Subject:** | FW: Requesting information |
| | |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Flagged |

Please add this to the employee's case file.

**Dinorah Núñez-White, Esq., MPA|** *Executive Director*
Human Resources Solutions/Office of Disciplinary Affairs
150 Greenwich Street, 31ˢᵗ Floor
New York, NY 10007
T: 929-221-5671  Work Cell: 646-235-8846
F: 917-639-0363
*nunez-whited@dss.nyc.gov* | *NYC.gov/dss*
ODA@dss.nyc.gov



Human Resources
Administration
Department of
Homeless Services

**Department of
Social Services**

*Serving New Yorkers with Care and Compassion*

CONFIDENTIALITY NOTICE:
If you have received this electronic transmission in error, delete it without copying or forwarding it and notify the sender of the error.

---

**From:** Nunez-White, Dinorah <nunez-whited@dss.nyc.gov>
**Sent:** Wednesday, February 15, 2023 4:54 PM
**To:** Goonewardena, Prasanna <goonewardenapr@hra.nyc.gov>
**Cc:** George, Mark <georgem@dss.nyc.gov>; Office of Disciplinary Affairs <oda@dss.nyc.gov>
**Subject:** RE: Requesting information

Good afternoon,

You have not been served with any charges from our office so there are no documents for us to provide to you.
If we serve you with charges, your union representative or attorney can request the documents.

**Dinorah Núñez-White, Esq., MPA|** *Executive Director*
Human Resources Solutions/Office of Disciplinary Affairs
150 Greenwich Street, 31ˢᵗ Floor
New York, NY 10007
T: 929-221-5671  Work Cell: 646-235-8846
F: 917-639-0363

1

Exhibit O

BOONE - CROSS - GOONEWARDENA

1        ALJ DAVIS:  Mr. Goonewardena, you -- you've played

2   it.  You -- I suspect your argument is going to be that you

3   did not ask her -- her about her race on the video -- excuse

4   me, on the audio, correct?

5            MR. GOONEWARDENA:  It's not, this is obvious.

6            ALJ DAVIS:  Okay, Mr. Goonewardena.

7            MR. GOONEWARDENA:  I want to play it again and also

8   give her another chance to -- whether to correct the --

9   correct the statement or not.  Let's play it again, please.

10           ALJ DAVIS:  Okay.  I'm sorry.

11           MR. GOONEWARDENA:  Let's -- can I play it again,

12  please?

13           ALJ DAVIS:  Play?

14           MR. GOONEWARDENA:  The recording, again.  It's only

15  two -- two --

16           ALJ DAVIS:  Okay.  You did not just say -- you said

17  play it again, is that what you said?

18           MR. GOONEWARDENA:  Please, please.

19           ALJ DAVIS:  Okay.  You may play it one more time.

20           MR. GOONEWARDENA:  Thank you.

21           ALJ DAVIS:  But -- but, Mr. Goonewardena, you have

22  to remind -- be reminded of what we discussed last week.

23           MR. GOONEWARDENA:  Yes.

24           ALJ DAVIS:  So, Ms. Boone.

25           MS. BOONE:  Yes.

BOONE - CROSS - GOONEWARDENA

1              ALJ DAVIS:  We're going to play the recording

2      again.

3              MS. BOONE:  Again.

4              ALJ DAVIS:  Okay?

5              MS. BOONE:  No problem.

6              ALJ DAVIS:  And you're going to listen to it.

7              MS. BOONE:  Okay.

8              ALJ DAVIS:  And when the recording is done --

9              MS. BOONE:  Okay.

10             ALJ DAVIS:  -- just let us know --

11             MS. BOONE:  Okay.

12             ALJ DAVIS:  -- yes or no.

13             MS. BOONE:  Okay.

14             ALJ DAVIS:  Simple yes or no, whether you heard Mr.

15     Goonewardena ask you about your race on this recording.

16             MS. BOONE:  No problem.

17             ALJ DAVIS:  Thank you.

18             MS. BOONE:  Thank you.

19             MR. GOONEWARDENA:  Thank you, Your Honor.

20             [AUDIO PLAYED]

21             MR. GOONEWARDENA:  Can I just ask a question?

22     There's something she -- came up where she testified, may I -

23     - I just wanted to stop it there.

24             ALJ DAVIS:  No.  No.

25             MR. GOONEWARDENA:  May I ask a different question

1          now?

2                     ALJ DAVIS:  No, no, no.  You have a ques -- finish

3          the recording.  You have a question in front of you -- she

4          has a question in front of you -- finish the recording, Mr.

5          Goonewardena.

6                     [AUDIO PLAYED]

7                     ALJ DAVIS:  Did -- Ms. Boone, the question is, did

8          you hear Mr. Goonewardena ask you about your race on the

9          video -- on the audio?

10                     MS. BOONE:  No.

11                     ALJ DAVIS:  Okay.  Next question, Mr. Goonewardena.

12          Q:   Now, is it fair to say -- do you believe your

13     interactions with me was appropriate?

14          A:   Yes.

15          Q:   In what so -- in what way?

16          A:   You asked me a question about Mr. Dickerson.

17          Q:   No, no, no.  The -- you just listened to the recording

18     and you went on arguing -- arguing --

19          A:   I wasn't arguing with you, sir.  I was doing my job.  I

20     was very calmly, like, I'm calm now with you.  You came and

21     approached me when I actually told you about Mr. Dickerson.  You

22     came and asked me about Mr. Dickerson, which I don't know why you

23     did.  If you was here for a meeting or a hearing, you should have

24     kept it as that.  But you asked me a question regarding Mr.

25     Dickerson, and why did you do that?  Why would you even record?  I

1      think that was very inappropriate, very unprofessional.  You

2      coming around, going around people's jobs, recording them on their

3      phone without their interactions.  You didn't even ask me.

4                    ALJ DAVIS:  Okay.  Thank you.

5                    MR. GOONEWARDENA:  No, no, no.  I want her to go

6          on.

7                    ALJ DAVIS:  Mr. -- Mr. Goonewardena.  Okay.  You --

8                    MR. GOONEWARDENA:  Yeah.

9                    ALJ DAVIS:  Composure, Mr. Goonewardena.

10                   MR. GOONEWARDENA:  Yeah.

11         Q:    And -- and is it fair to say I barely spoke anything on

12     that recording?

13         A:    You barely did what on that recording?

14         Q:    I spoke.

15                   ALJ DAVIS:  Okay.  Okay.  Mr. Goonewardena, the

16         recording speaks for itself, okay.  To character -- it

17         doesn't matter if the witness thinks you spoke a lot or a

18         little on the recording.  The recording is in evidence, the

19         recording speaks for itself, okay?  So --

20                   MR. GOONEWARDENA:  And -- I'm sorry.

21                   ALJ DAVIS:  Go ahead.

22                   MR. GOONEWARDENA:  And the reason I said, the

23         Petitioner asked specific question, how she felt and among

24         other things, so I'm asking her opinion.

25                   ALJ DAVIS:  No, no.  You -- okay.  You're -- okay,

1    Mr. Goonewardena, but it -- it -- it doesn't matter what --

2    whether she thinks you spoke a lot or a little on the

3    recording.  So ask -- if you want to ask about how the

4    incident made her feel, if you want to ask that again, you

5    may.  So next question, please.

6    Q:   So did I make any threats?

7    A:   No threats.

8              ALJ DAVIS:  Thank you.  That's it.  That's the

9    answer.  No threats.

10   Q:   And --

11             ALJ DAVIS:  Go ahead, next question.

12             MR. GOONEWARDENA:  Well, Your Honor, if she wants

13   to go on, I'm willing to go on, let her go on, okay?

14             ALJ DAVIS:  I -- I -- I -- I advise you, Mr.

15   Goonewardena, that I don't think that would be beneficial to

16   your case.  So I suggest that you move on to the next

17   question.  But if you -- if you want to not take my advice

18   and -- and let the witness continue to answer, you may very

19   well do so.  Yeah --

20             MR. GOONEWARDENA:  I -- I -- I believe it is going

21   to help, it goes to the --

22             ALJ DAVIS:  Okay.  Very good.

23             MR. GOONEWARDENA:  -- witness.

24             ALJ DAVIS:  Okay, thank you.  Ms. Boone, you can

25   continue with -- answer, I -- I interrupted you.  Go ahead.

## Goonewardena, Prasanna

| | |
|---|---|
| **From:** | Tone-Hill, Emily |
| **Sent:** | Tuesday, April 30, 2024 3:36 PM |
| **To:** | Rivera, Cindy; Goonewardena, Prasanna |
| **Cc:** | Latimer-Jackson, Charise |
| **Subject:** | RE: Send me the discovery package for ODA No.: 1412014-05 |

Please disregard that last email, it was intended for someone else.

**From:** Tone-Hill, Emily
**Sent:** Tuesday, April 30, 2024 3:34 PM
**To:** Rivera, Cindy <riveraci@dss.nyc.gov>; Goonewardena, Prasanna <goonewardenapr@hra.nyc.gov>
**Cc:** Latimer-Jackson, Charise <latimer-jacksonc@dss.nyc.gov>
**Subject:** RE: Send me the discovery package for ODA No.: 1412014-05

Great, thank you.

**From:** Rivera, Cindy <riveraci@dss.nyc.gov>
**Sent:** Tuesday, April 30, 2024 10:30 AM
**To:** Goonewardena, Prasanna <goonewardenapr@hra.nyc.gov>
**Cc:** Tone-Hill, Emily <toneem@dss.nyc.gov>; Latimer-Jackson, Charise <latimer-jacksonc@dss.nyc.gov>
**Subject:** RE: Send me the discovery package for ODA No.: 1412014-05

Good morning,

Enclosed is the discovery package. Once ODA has a new IC date, you will be informed.


**Cindy Rivera|** *Step 1 Hearing Officer*
*OLR/Office of Employee Integrity and Performance*
**Office of Disciplinary Affairs (ODA)**
150 Greenwich Street, 31st Floor
New York, NY 10007
T: 929-221-7080  F: 917-639-0363
✉ *riveraci@dss.nyc.gov* | *NYC.gov/dss* | ODA@dss.nyc.gov


Human Resources
Administration
Department of
Homeless Services
**Department of
Social Services**

*Serving New Yorkers with Care and Compassion*

CONFIDENTIALITY NOTICE:
If you have received this electronic transmission in error, delete it without copying or forwarding it and notify the sender of the error.

Exhibit P

Short Caption: **PRASANNA GOONEWARDENA v. DENISE DEPRIMA**
Case Type: **Torts – Other (Conversion)**
Case Status: **RJI Pending**
eFiling Status: **Full Participation Recorded**

E-mail Participating Parties
**Narrow By Options**

Document Type:  Please select...          ∨     Filed By:

Please select...                      ∨

Motion Info:                              ∨     Filed Date:

📅  thru          📅

Document Number:
Display Document List with Motion Folders 📑

Sort By:  Doc #        ∨

| # | Document | Filed By | Status |
|---|----------|----------|--------|
| 1 | COUNTY CLERK MINUTES -PRIOR TO CONVERSION | Court User<br>Filed: 06/30/2023<br>*Received: 06/30/2023* | **Processed**<br>Confirmation Notice |
| 2 | APPROVED - LETTER APPLICATION TO CONVERT TO E-FILING | Court User<br>Filed: 06/30/2023<br>*Received: 06/30/2023* | **Processed**<br>Confirmation Notice |
| 3 | ANSWER<br>*Answer to amended complaint* | Counsel, C.<br>Filed: 07/05/2023<br>*Received: 07/05/2023* | **Processed**<br>Confirmation Notice |
| 4 | COMPLAINT (AMENDED) | Goonewardena, P. (Pro Hac / Pro Se)<br>Filed: 08/11/2023<br>*Received: 08/11/2023* | **Processed**<br>Confirmation Notice |
| 5 | RJI -RE: REQUEST FOR PRELIMINARY CONFERENCE | Goonewardena, P. (Pro Hac / Pro Se)<br>Filed: 12/04/2023<br>*Received: 12/04/2023* | ***\*\*\* Pending \*\*\****<br>Confirmation Notice<br>Payment Receipt |

Exhibit Q

*H H*

**Goonewardena, Prasanna**

| | |
|---|---|
| **From:** | DePrima, Denise |
| **Sent:** | Wednesday, December 28, 2022 4:03 PM |
| **To:** | Goonewardena, Prasanna |
| **Subject:** | RE: Request a reply |

Mr Dickerson will reach out to you tomorrow.

Permanent staff can not be terminated for a discplinary matter without charges being serviced and then being afforded due process.

**Denise DePrima** | *Deputy Commissioner*
Pronouns: She, Her, Hers Gender Pronouns Guidelines
HUMAN RESOURCES SOLUTIONS / OFFICE OF LABOR RELATIONS
150 Greenwich Street  – 31st Floor – New York, NY 10007
T: 929 221 5674 C: 917 297 8535
*deprimad@dss.nyc.gov* | **NYC.gov/dss**

-------- Original message --------
From: "Goonewardena, Prasanna" <goonewardenapr@hra.nyc.gov>
Date: 12/28/22 3:24 PM (GMT-05:00)
To: "DePrima, Denise" <deprimad@dss.nyc.gov>
Subject: FW: Request a reply

Hi,

Here is my email they didn't respond yet.

They are getting ready to terminate me without a valid cause.

The one who is behind this is Albert Gamarra.

He thinks I don't know that.

**From:** Goonewardena, Prasanna
**Sent:** Wednesday, December 28, 2022 2:09 PM
**To:** Singh, Andrei <singha@dss.nyc.gov>
**Cc:** Harvey, Charmaine <harveyc@dss.nyc.gov>
**Subject:** Request a reply

Good afternoon,

Exhibit R

**Goonewardena, Prasanna**

| | |
|---|---|
| **From:** | Goonewardena, Prasanna |
| **Sent:** | Tuesday, July 2, 2024 11:09 AM |
| **To:** | DePrima, Denise; Neal, Mark |
| **Cc:** | Molly Park; Neal, Mark; Berry, Jill; Scalia, Ann Marie; DSSInspectorGeneral |
| **Subject:** | Complaint of harassment |
| **Attachments:** | R-00055_2301050645_REC.MP3; R-00005_2305172309_VOS.MP3; R-00042_2212300131_VOS.MP3; R-00006_2303030013_REC.MP3; R-00034_2306222246_REC.MP3; R-00009_2308110440_REC (1).MP3 |

| **Tracking:** | **Recipient** | **Read** |
|---|---|---|
| | DePrima, Denise | Read: 7/2/2024 11:36 AM |
| | Neal, Mark | |
| | Molly Park | |
| | Neal, Mark | |
| | Berry, Jill | |
| | Scalia, Ann Marie | |
| | DSSInspectorGeneral | |

From: Prasanna Goonewardena

To Denise Deprima, Deputy Director of labor relations
    Mark Neal, Chief People officer

Re: Complaint against Charise Latimer-Jackson, Cindy Rivera, Dinorah Nunez-White, Emily Tone-Hill & Ann Scalia for harassment & creating hostile work environment

Complaint

On 6/22/24, Cindy Rivera & Charise Latimer-Jackson after consulting with Dinorah Nunez-White, Mark Neal & Ann Scalia, enlisted a bodybuilder (lobby front desk clerk's supervisor) who is not a contracted security HRA uses to harass, annoy and intimidate the HRA employee Prasanna Goonewardena. (Listen to the recording of 6/22/24 attached here.) This is not an allegation. It is a proven fact. Ms. Latimer-Jackson's and Ms. River's conduct is criminal in nature. (See penal law 120.15.) New York Penal Code § 120.15: Menacing in the third degree: A person is guilty of menacing in the third degree when, by physical menace, he or she intentionally places or attempts to place another person in fear of death, imminent serious physical injury or physical injury.

Dinorah Nunez-White conspired with others making false accusations that I asked whether Petal Harlow – who I never met, is black; that I asked personal questions about her on May 17, 2023. (Listen to the recording R-00009_2308110.); that Ms. Nunez-White told Goonewardena not to contact her. At OATH trial, after playing the recording, she confirmed that the accusations she made are false. All of you conspired with each other to make frivolous & false accusations against me creating a hostile work environment for racial discrimination and prejudiced reasons. It is not disputed that Ms. Nunez-White repeatedly [shopped] for individuals to make outrageous false accusations against Goonewardena.

1

Ms. Nunez-White, Dominican Descent, Charise Latimer-Jackson, black race & Cindy Rivera, Puerto Rican Descent, after committing criminal & unlawful conducts against Goonewardena, still enjoying as the goods and services, DSS has to offer without being terminated.

Goonewardena is going to send another amended complaint with additional conducts by others (Scalia, Tone-Hill & Paul Ligresti) in a few days. For now, I respectfully request your office to generate a case # and inform me of such, and final decision of your decision.

This is a must. You may not retaliate against me for filing this complaint.

I respectfully request a reply within 2 days that: (1) Your office received the complaint, (2) That your office is going to investigate my complaint, (3) That your office is going to refer Charise Latimer-Jackson, Cindy Rivera & Dinorah Nunez-White to the NYPD for criminal prosecution.

Failure to take appropriate action, will be a serious misconduct in your part as you are obligated by law to investigate.

Following audio recordings are attached:

1. May 17, 2023, Phone conversation with Dinorah Nunez-White;
2. March 10, 2023, phone conversation with EEO Eric Smalls;
3. Recording with EEO Eric Smalls;
4. Recording with my immediate supervisor Andrei Singh to prove that I followed chain of command;
5. Recording with Sherkia Boone on 6/22/23;
6. Recording of 1/11/23 conference with Mr. Albert Gamarra and others.

I am not going to produce the recording of the phone conversation with Denise DE Prima yet. It will be introduced in my federal action at the appropriate time.

I was specifically targeted by ODA office (Nunez-White & OLA- Scalia) because of my race, creed & color. This is not in dispute.

This is a valid complaint.

Since this is a protected activity, please do not retaliate. Follow the law. Both of you (Denise DePrima & Mark Neal)get paid to apply the law each day in performing your duties as taxpayers expect.

I do not want a reply from the lead conspirators- Paul Ligresti at the direction of Ann Scalia.

Thank you very much.

I hope to hear from you soon.


Best,

-/s/-


Prasanna Goonewardena

**Goonewardena, Prasanna**

| | |
|---|---|
| **From:** | Goonewardena, Prasanna |
| **Sent:** | Wednesday, July 10, 2024 4:16 PM |
| **To:** | Ligresti, Paul; Scalia, Ann Marie; Neal, Mark; DePrima, Denise; Berry, Jill; Pira, Frank |
| **Cc:** | Molly Park; PRASAGOON2@GMAIL.COM |
| **Subject:** | Reply to my complaint |
| **Attachments:** | Jaceuline Torres v. NYC Department of social Service |

| **Tracking:** | **Recipient** | **Read** |
|---|---|---|
| | Ligresti, Paul | |
| | Scalia, Ann Marie | |
| | Neal, Mark | |
| | DePrima, Denise | Read: 7/10/2024 4:24 PM |
| | Berry, Jill | |
| | Pira, Frank | |
| | Molly Park | |
| | PRASAGOON2@GMAIL.COM | |

Good afternoon,

This is a legal communication.

This is not a harassment or a threat.

Ms. Scalia now is on a call. Mr. Ligesti is on an HRA devise. Jill Berry is on a call.

I filed a valid complaint against Me Charise Latimer-Jackson, Cindy Rivera, Ann Scalia, Paul Ligresti & Dinorah Nunez-White for harassment & criminal mischief for enlisting a bodybuilder( 4 World Trade Center lobby desk clerk's supervisor) to harass, annoy, intimidate and threatened Prasanna Goonewardena on 6/22/23 on the 31st floor while HRA contracted FJC two security officers were present.

Please send me an update on my complaint. As a matter of law, Ms. DePrima and Mr. Mark Neal for prejudiced reasons cannot ignore my valid complaint. Taxpayers pay Ms. DePrima & Mr. Neal to perform their duties not to conspire.

Ms. Rivera at the advice of the legal department, recommended termination on ODA No.: 1412014-05 without properly following CSL section 75. I filed my papers of election of section 75 hearing.

I do not believe that HRA legal department is going to be the petitioner's lawyer. (Did it once and backfired.)It was just embarrassing seeing a clown show.

I am going to object to proceed with any such case until the pending two cases before OATH is finalized. This is how the law works.

The ODA No.: 1412014-05 (discovery & charges are frivolous, unfounded and as a matter of law cannot be proven). Considering Ms. Emily Tone-Hill & Ms. Naidu-Price made fool out of themselves, this clearly proves retaliation on me. (Serving 5 sets of false accusations.)

The accusations made by the writer about the phone conversation with Ms. Hernandez and Mr. Stadnyk are totally false that can be easily proven as the entire conversation was recorded. I gave a copy to Hernandez & Stadnyk. The point is: You guys lied in all four ODA previous charges at OATH, and now lied about the phone conversation, then everything else are lies too. This is common sense: follow the pattern.

OLA has the discretion to take actions: never to proceed with lies where going to court and spin lies. It is unlawful. I haven't done anything yet against the perpetrators. It takes time.

Why is Frank Pira, Dinorah Nunez-White, Charise Latimer-Jackson (unstable person), Scalia, Ligresti (was home since 2020 until recently) Tone-Hill still with HRA? Just because of their race. How does Frank Pira get to go shopping at the taxpayer's expense?

I have to get the FBI and the Justice department involved. There is a federal cause triggering their involvement.

There are a lot of good & decent people here. I work with some of them. People included in this email destroyed my life and continue to do so.

How did a sexual predator-Gary Jenkins was never brought up on charges?

If Nunez-White and others didn't do anything wrong, why lied at trial contradicting the audio recording?

Why would a liar and a conman like Eric Smalls still gets to collect a salary and do EEO trainings while he is violating the laws?

Just sickening.

I respectfully request a reply from Ms. DePrima and Mr. Neal regarding my complaint I filed with the labor relations for criminal mischief by Friday July 12, 2024.


Best,

 -/s/-

*Prasanna Goonewardena*

Prasanna Goonewardena | Program Integrity Investigator
Pronouns: He, his, Him
BUREAU OF FRAUD INVESTIGATION
375 Pearl Street, New York, NY 10038
T: 929-252-2190
Goonewardenapr@hra.nyc.gov | **NYC.gov/dss**

Exhibit

S

*K R*

## Goonewardena, Prasanna

| | |
|---|---|
| **From:** | Battle, Robyn |
| **Sent:** | Thursday, December 14, 2023 11:17 AM |
| **To:** | Goonewardena, Prasanna |
| **Cc:** | Paisley, Tomica; Battle, Robyn |
| **Subject:** | Together We Make A Difference for New Yorkers |
| **Attachments:** | ATT00001.bin |



Together We Make a Difference for New Yorkers

# XCELLENCE
## PROGRAM

12/14/2023

Hello Prasanna Goonewardena,

Thanks for your assistance and for being a true team player.

Thank you for making a difference every day! **#Service #Respect**

With gratitude,
**Robyn Battle**

Click Here to Send Your Own E–Card

1